### John T. Hoxton and Wife's Lessee *vs.* John Archer, et al.—Dec. 1831.

It is a general rule in the construction of wills, that a limitation which may operate as a remainder, shall not be construed an executory devise.

Tenant in fee, on the 8th May, 1775, devised as follows, "I give and bequeath the whole of my estate, both real and personal, unto my five daughters, to them and their heirs for ever, to be equally divided amongst them; and it is my will, that if either of the said children, die without issue lawfully begotten of their body, in that case, the part of the said child be equally divided among my surviving daughters." Held, that this will being made before the act to direct descents, the devisees each took estates tail general, with cross remainders in fee, under the limitation over to the survivors.

It is a general rule, that where there are no particular and sufficient words used for that purpose, surviving shares in a devise of real property will not, upon the decease of one who took as a survivor, survive again.

Appeal from *Harford* County Court.

This was an action of *Ejectment,* brought by the appellants, on the 21st February, 1829, against *John Archer, Herman Stump,* and *James Stephenson,* the appellees, to recover an undivided interest, in a tract of land, called *The Land of Promise.* The defendants pleaded not guilty, and took defence on warrant. The following statement of facts was submitted for the judgment of the court. " It is

agreed in this case, that *Nathaniel Giles*, died seized of the tract of land for which this suit is brought, some time in the year 1775, having first made his will, legally executed to pass real estate, and which will is as follows :—"I, *Nathaniel Giles*, of *Harford* county, in the province of *Maryland*, being weak in body, but of sound mind and memory, do make and ordain this my last will and testament, in manner and form following, to wit: First, I give and bequeath unto my beloved friend *Tabitha Richardson*, £25 common money. *Item*, I give and bequeath unto my friend *Sarah Coale*, £15 common money. *Item*, I give and bequeath the whole of my estate, both real and personal, unto my five daughters, by the names of *Hannah*, *Sarah*, *Elizabeth*, *Caroline*, and *Charlotte*, to them, and their heirs for ever, to be equally divided amongst them ; and it is my will, that if either of the said children, die without issue, lawfully begotten of their body, in that case, the part of the said child be equally divided among my surviving daughters. I do hereby make null and void, all wills made by me heretofore, &c."—this will is dated on the 8th May, 1775. It is further agreed, that the devisees named in the said will, were the only heirs at law of the said *Nathaniel Giles*, and entered upon the said land, and were duly seized thereof, and that *Charlotte*, one of the said devisees, died a minor, and without having been married, or having had issue. That afterwards a partition of said land was duly made, between the four surviving devisees; to wit, *Hannah*, *Sarah*, *Caroline*, and *Elizabeth*, and each entered upon the portion assigned to her by said partition. That afterwards, *Hannah*, *Sarah*, and *Caroline*, all died, each leaving issue, now living. That *Elizabeth*, after said partition, sold and conveyed the part of said land allotted to her, under such partition, to *John Stump*, by deed duly executed, acknowledged and recorded, which deed is as follows: "This indenture, made the 16th of May, 1797, between *Elizabeth Giles*, of *Harford* county, of the one part, and *John Stump*, of the said county, of the other part,

witnesseth, that the said *Elizabeth Giles*, for and in consideration of the sum of £750, to her in hand paid by the said *John Stump*, the receipt whereof is, &c. hath granted, bargained, sold, aliened, enfeoffed and confirmed, and by these presents doth grant, bargain, sell, alien, enfeoff, and confirm, unto the said *John Stump*, his heirs and assigns, the following tract, or parcel of land, lying in the county aforesaid, and known in the division by the name of lot number three, and being part of a tract of land called *The land of Promise*, beginning, &c. to have and to hold, the aforesaid tract or parcel of land, and premises, with the appurtenances, unto the said *John Stump*, his heirs and assigns forever." And it was further admitted, that the title of said *Stump* is duly vested in the defendants. That said *Elizabeth* survived all the other devisees, named in the said will of *N. Giles*, and afterwards herself died in the year 1827, without issue, or having been married, and that the lessors of the plaintiff are the only heirs at law of *Sarah*, one of the aforesaid devisees. It is further agreed, that this suit is brought to recover an undivided moiety of that part of the land assigned as aforesaid, under the partition to *Elizabeth*. If upon these facts, the County Court should be of opinion that the plaintiffs are entitled to recover, then judgment to be entered for the plaintiff, for one undivided third part of *Elizabeth's* part of said land, or for such undivided part as she may be entitled to; but if the court should be of opinion that the plaintiff is not entitled to recover, then judgment to be rendered for the defendants. It is also agreed that either party may be at liberty to appeal from the judgment which may be rendered upon this statement, in like manner as if the facts herein stated, were stated in a bill of exceptions.

The County Court, with the consent of parties, gave a *pro forma* judgment for the defendants, and the plaintiffs appealed to this court.

When the case came on to be argued in the Court of Appeals, the following additional statement of facts was

agreed to by the counsel: it was admitted, "that *Hannah, Sarah, and Caroline Giles,* three of the devisees of *Nathaniel Giles,* were living at the execution of the deed from *Elizabeth Giles* to *John Stump.* That *Charlotte Giles,* one of the devisees, died an infant, and without issue, before the year 1797. That *Hannah* died in 1813, *Caroline* in 1816, and *Sarah* in 1824, and that their children are the only heirs at law of *Elizabeth.*

The cause was argued before BUCHANAN, Ch. J., STEPHEN, and DORSEY, J.

*Speed,* for the appellant, contended,

1. That under the will of *Nathaniel Giles,* his daughter *Elizabeth* took an estate in fee simple, in an undivided fifth part of the real estate devised to her and her sisters as tenants in common, liable to be divested upon the contingency of dying without issue living at the time of her death. 2. That the devise over was good, as an executory devise for life; in support of these two points he cited *Gilbert on Wills,* 54, 5, 6. *Cro. James,* 590. *Cro. Eliz.* 52. *Woodward vs. Glasbrook,* 2 *Vernon* 388. *Metham vs. Duke of Devon,* 1 *P. Wms.* 534. *Forth vs. Chapman, Ib.* 663. *Target vs. Grant, Ib.* 432. *Porter vs. Bradley,* 3 *Term. Rep.* 145. *Daintry vs. Daintry,* 6 *Ib.* 307. *Roe vs. Jeffrey,* 7 *Ib.* 589. *Fosdick vs. Cornell,* 1 *John.* 440. *Anderson vs. Jackson,* 16 *John.* 382. *Clayton vs. Lowe,* 7 *Serg. and Low.* 218. *Morgan vs. Morgan,* 5 *Day. Ca.* 517 *Geering vs. Shenton, Cowper.* 410. *Newton vs. Griffith,* 1 *Harr. and Gill,* 124. *Doe vs. Webber,* 1 *Bar. and Ald.* 713, 720. 2 *Fearne,* 245. 4 *Com. Dig.* 170. 3. That at the time of the conveyance by *Elizabeth* to *John Stump,* in 1797, the estate was in perpetuity, and said conveyance was inoperative on the part she took under the first branch of the devise. *Scatterwood vs. Edge, Salk.* 229. *Gilbert on Wills,* 64, 66. 4. That the devise over being only for life, after the death of *Charlotte, Elizabeth* took a life estate in one

fourth part of her portion, under the first branch of the devise. 4 *Com. Dig. title devise No.* 11, 189. *Woodward vs. Glasbrook,* 2 *Vernon,* 388. *Jackson vs. Thompson,* 6 *Cowen,* 178. *Cro. Eliz.* 358, 2 *Merriv.* 133. *Hawley vs. Northampton,* 8 *Mass.* 3. *Holloway vs. Holloway,* 5 *Ves.* 401. 3 *Wilson,* 247. 1 *Bay,* 80. 5. If by the first branch of the devise, an estate tail only passed, the limitation over for life was good as a *remainder*, and *Elizabeth* taking one-fourth of *Charlotte's* part, as a remainder for life only, could pass no greater interest by the deed to *Stump*, and that life estate having determined by the death of *Elizabeth,* we are entitled to recover our portion of it, viz: *one third* as heirs of the reversion. 6. If Elizabeth, dying without issue living at the time of her death, never acquired an absolute fee, and none of the devisees over for life, being in existence to take at the time of her death, the estate reverted, and the plaintiffs, as heirs of the reversion, are entitled to recover one-third of the premises in question. 7. If *Elizabeth* acquired a fee simple *absolute* in the property she took, under the first branch of the devise, she died, seized thereof; and the plaintiff, as one of her heirs at law, has a right to recover one-third part of that property. 8. The estate being in perpetuity at the date of the deed to *Stump, Elizabeth,* by executing that deed, forfeited all her interest in the property, it reverted—and we, as heirs of the reversion, claim.

*Johnson,* for the appellee.

1. If at any period between the date of the deed from *Elizabeth Giles* to *Stump,* and her death, she acquired a title to the property conveyed, in fee simple or fee tail, no one claiming under her, can recover the property so conveyed; her deed would operate as an *estoppel. Fairtille vs. Gilbert,* 2 *Term. Rep.* 172. 3 *Blac. Com.* 308. 2. The will of *N. Giles* created in his daughters and devisees, an estate tail general, with cross remainders in tail general to the survivors. If the devisees over, took but estates for life; then, upon the death of *Charlotte, Elizabeth* took for life, three-fourths of her share of

the estate, and as the inheritance belonged to the heirs at law of *Nathaniel Giles*, of whom *Elizabeth* was one, she was entitled to one-fourth of the fee, being entitled to a life estate, as one of the devisees over, and the inheritance, as one of the heirs at law of *N. Giles.* The partition vested in her a separate estate in her share, and this separate estate was transferred to *Stump* by her deed in 1797. This is clearly the case in relation to *Charlotte's* estate, and the same may be affirmed of her own, at the time of her death. In *Dallam vs. Dallam*, 7 *Harr. and Johns.* 236, it was decided, that the devise over would be construed to be remainder, unless the intention of the testator to the contrary, was perfectly apparent. In devises of real estate, the words dying without issue, or dying without leaving or having issue, mean an indefinite failure of issue, unless an opposite intention is manifest. *Newton vs. Griffith*, 1 *Harr. and Gill*, 115. The question whether a limitation over by way of executory devise is good, does not depend upon, whether the estate limited over must vest within the prescribed limits, but whether the *event* must happen within those limits. If then, the rule is, that as regards real estate, the "dying without issue" means an indefinite failure of issue, then the limitation over in this will is not good as an executory devise, unless there are some expressions to restrict their import. The circumstance that the limitation over, is to persons in being, is not sufficient. 1 *Harr. and Gill*, 123. Nor as is decided in that case, will the fact, that the limitation over, is but a life estate. It is very clear, that in this case the testator intended to devise his whole estate to his daughters, which object would be defeated by construing the limitation over to be but of a life estate; for then he would die intestate of the fee. Upon the death of either of the first takers, the testator intended, that the survivors should take the same estate, as the deceased ; otherwise, if four of them should die without issue, four-fifths of the estate of the testator, would be undisposed of by his will. Upon the death of *Charlotte*, *Elizabeth* took an estate tail in that

portion of the share of *Charlotte,* which devolved on her. *Lion vs. Burtiss,* 20 *Johns. Rep.* 483. 3 *Morgan vs. Morgan,* 5 *Day.* 517. 3. That part of the estate which was devised to *Charlotte,* and survived to *Elizabeth,* would not have survived to the other sisters in the event of the death of *Elizabeth* before them, but would have descended to those who would have been entitled in the absence of a will. At the date of the deed to *Stump* then, she had an estate tail in this share, not subject to survivorship. But suppose she took only a life estate, under the will, in her part of *Charlotte's* share; still, as one of the four heirs of testator, she was entitled to the reversion in fee, which, added to the previous life estate, gave her a perfect title in fee; and this interest, because one in severalty by the partition, passed by her subsequent deed to *Stump.*

*R. N. Martin,* in reply, for the appellant, contended, that by the first words of this will, an estate in fee simple is expressly devised to the daughters of the testator, as tenants in common. But it is supposed, that by the subsequent provision, "if either of them die without issue," &c. it is restrained to an estate in tail. That such is the technical import of those words, is not denied. It has, however, this limitation; "if there is nothing in the will showing a different intention on the part of the testator, and restricting the failure of issue to the death of the devisee, or to some other time or event." *Dallam vs. Dallam,* 7 *Harr. and Johns.* 238. If an estate is devised to one for life, and if he die without issue, then over; it is ruled an estate in tail. This is done in favor of the issue. It is not a fee in the devisee, because the intention was, to give to him only an estate for life; and in interpreting a devise of this kind into an estate in tail, the particular intent to devise, in the first instance, an estate for life, is sacrificed to the paramount intention of providing for the issue. So, if an estate in tail is devised with a limitation over, on the devisee dying without issue, it continues an estate tail.

The subsequent words confirm the character of the estate first devised, and the limitation vests as a remainder. On a devise to A and his heirs, and if he die without issue, to B and his heirs, it is also an estate in tail: for in the absence of all restrictive, or explanatory expressions in the will, the testator is supposed to have used those words in their technical sense ; and as there is nothing, in a devise of this kind, indicating an intention on the part of the testator to employ them in a different or more restricted sense, the inference deducible from their legal import, remains unshaken. But it is different when there are in the will restrictive, or explanatory provisions. The words are then rescued from the technical meaning attached to them by the law, and are understood according to their grammatical and ordinary import. It is believed that there is no rule of law more firmly established, than that the court will depart from the technical sense of the words, for the purpose of effectuating the intention of the testator, whenever it appears that he did not intend to make that disposition of his estate, which the technical words import. *Chapman vs. Brown*, 3 *Bur.* 1634, 1635. 1 *Bos. and Pul.* 257. *Cooper vs. Collis*, 4 *Term.* 297, *note* (*d.*) It was then insisted, that circumstances restricting the general expressions, were to be found in the character of this limitation. What is the nature of this limitation? It is to persons *in esse*, for life —the words " surviving daughters," define with precision the persons who are to take under the limitation. It is *personal* to them : it does not comprehend their heirs, or issue, so as to admit them to a participation of the estate, if a devisee chanced to die, leaving heirs, &c. before the contingency happened. *Cro. Eliz.* 358. 2 *Merri.* 133. *Woollen vs. Andrewes*, 2 *Bing.* 126. *Jackson vs. Thompson*, 6 *Cowen*, 178. *Newton vs. Griffith*, 1 *Harr. and Gill*, 119. Nor was the estate to which a surviving daughter might be entitled on the death of a sister, without issue, assignable, alienable, or devisable, until the party who was to receive it, had become *persona designata* by the occur-

rence of the contingency on which it was to survive. *Doe vs. Tomkinson,* 2 *Maul. and Sel.* 165. *Presl. on Est.* 76. That no more than a life estate was limitted to the sur-viving daughter, is shown by the cases of *Woodward vs. Glasbrook,* 2 *Vesey,* 388, and *Pettywood vs. Cook, Cro. Eliz.* 52. But whether there was a devise over, for life or in fee, is not deemed material to this part of the argument; for it has been seen, that by this limitation, pro-vision is made only for the *individual* daughters surviving, and not the surviving branch: consequently, it never could be enjoyed, unless the contingency happened during their lives: they must have lived with the first devisees, have outlived them, and been in existence on the occurrence of the contingency. It has all the restrictive influence that can be attributed to the limitation of a life estate. It is much stronger than the limitation of a mere *constructive* life estate, as it is *expressly* confined to the surviving daugh-ters; and would seem to demonstrate, that the testator contemplated a proximate, and not a remote event, as that on which the investiture of the limitation over, was to de-pend. *Pells vs. Brown, Cro. Jas.* 590. *Porter vs. Brad-ley,* 3 *T. R.* 145. *Roe vs. Jeffreys.* 7 *T. R.* 569. *Doe vs. Webber,* 1 *B. and A.* 713. *Clayton vs. Lowe,* 5 *B. and A.* 636. *Hughes vs. Sayer,* 1 *P. Wm.* 534. *Massey vs. Hud-son,* 2 *Mer.* 133. *Fosdick vs. Cornell,* 1 *Johns.* 440. *Ex. of Moffatt vs. Strong,* 10 *Johns.* 12. *Jackson vs. Thompson,* 6 *Cowen,* 178. *Keyting vs. Reynolds,* 1 *Bay,* 80. *Morgan vs. Morgan,* 5 *Day,* 517.

It was contended that the cases of *Newton vs. Griffith,* 1 *Harr. and Gill,* 111. *Roe vs. Scott and Smart,* 2 *F.* 259. *Chaddock vs. Cowley, Crok. Jac.* 695. *Hope vs. Taylor,* 1 *Bur.* 288. *Romilly vs. James,* 6 *Taunt.* 263. *Tenny vs. Agar,* 12 *East.* 259. *Denn vs. Shenton, Cowp.* 410, cited for the appellee, were distinguishable from that before the court. In *Denn vs. Shenton, Cowp.* 410, there was a devise to one of the heirs of his body, and their heirs, forever, and if he died without issue to W. G. in fee, chargeable with the

payment of £100, to A. the testator's niece, within one year after *W. G.* or his heirs, should be possessed of the premises. There was in this case no circumstance restrictive of the general words. The limitation being to *W. G. and his heirs,* it is clear that if *W. G.* had died before the contingency happened, the estate would have vested in his heirs. Nor was the bequest of the £100, *personal* to the niece, as in *Doe vs. Webber,* 1 *B. and A.* 713; for if she had died before the occurrence of that event, on which the legacy was to be paid to her, her representatives would have been entitled to it. *Pinbury vs. Elkin,* 1 *P. Wm.* 563. The case of *Newton vs. Griffith,* certainly bears a general resemblance to the one under consideration; but in controversies depending on the construction of wills, authorities have no great weight, unless they agree exactly in every point, and are similar in every respect, with the case to be decided. You may refer to them for light, in reference to the general rules by which such instruments are to be interpreted, but without this strict similitude, they have no binding force; they must be almost *in verbis ipsissimis. Dodson vs. Green,* 2 *Wil.* 324. 3 *Wil.* 247. The reason of this principle is obvious; for the intention of a testator is often indicated by the most minute circumstances and expressions. Now, in *Newton vs. Griffith,* the limitation was to the survivors, and *their heirs. Here* it is personal to the surviving daughters; the materiality of which distinction, is forcibly stated by the learned court, at page 119 of the report, and is distinctly announced in *Massey vs. Hudson,* 2 *Merriv.* 133. In the case cited, there was only a devise of lands: by this will the testator has disposed of the whole of his estate, both real and personal. If in this controversy the testator's personal estate was involved, it is supposed that the court could not refuse to give effect to the limitation, as a valid executory devise. Why? Because it would be said, the testator must have contemplated a definite failure of issue: but it is evident he meant to fix the same time as to both estates; they were devised *in uno*

*flatu.* In *Chandess vs. Price,* 5 *Vesey,* 101, the Lord Chancellor said, " that the meaning of the words as to fixing the period, must be the same, in the same will." Again, in this will the testator has devised the *whole* of his estate ; this word is not to be found in *Newton vs. Griffith:* and although it is not contended that this word, if standing alone, could restrain the legal import of the general expressions, yet it comes in aid of the restrictive influence, attempted to be deduced from the other provisions of the will: for, the inquiry is, did the testator intend to make that disposition of his estate, which the general words, in their technical sense, import? Did he introduce them for the purpose of marking out a particular path of descent? or were they not rather used, to qualify the estate devised by the first words, and to declare when, and under what circumstances, it should cease. It is true, that this court, in considering the second branch of the devise, in the above case, say, that the circumstance of the devise over being general, without words of limitation, is not sufficient to "narrow down" the general expressions. But the restrictive circumstances furnished by the character of this limitation, are more forcible than any that can be drawn from a *constructive* life-estate. For, by this will, as we have seen, the estate is limited *expressly,* and not by *construction,* to the surviving daughters. It is, therefore, submitted, that inasmuch as this opinion was pronounced in reference to a will, differing from the one at bar in many of its most material features, it is impossible to regard it as binding authority. As to the case of *Chaddock vs. Cowley,* it is enough to say that it is obscurely reported: that it is at war with *Pells vs. Brown,* the parent case on this branch of the law; and that it is discredited by the extraordinary remarks attributed to the judges, who are supposed to have given the opinion. It will be found, that the cases relied on as conflicting with the construction for which we contend, are, 1. Cases where there were no circumstances or expressions restrictive of the legal import of the words, dying without

issue. *Romilly vs. James*, 6 *Taunt*. 263. *Terry vs. Agar*, 12 *East*. 254, &c. 2. Cases where, by the first words of the will, an estate for life was devised, yet was enlarged to an estate in tail, in favor of the issue. In those cases, the question necessarily was, whether the devisees received estates for life, or in tail. 3. Cases where the devisee having left issue living at his death, the devise over was construed a remainder, for the sake of the limitation, as it could not be maintained by way of executory devise. *Roe vs. Scott and Stuart*, 2 *F*. 269, &c. 4. Cases where, if the limitation was to the survivor, it was to them and their heirs ; and decided on the principle, that the heirs could come in under the limitation, on the death of the devisees before the contingency happened. It is obvious, that in this class of cases, the word *heirs* disarms the limitation of all the restrictive influence which might be derived from it, if it was confined, as in this case, expressly and personally, to the surviving daughters. As to that portion of the estate devised to *Charlotte*, and which survived on her death, it was contended, that it vested in the surviving sisters, only for life. In support of this position, the authorities already cited, were referred to. That it did not merge in the inheritance, as supposed by the counsel for the appellee, because it was not to survive again, on the death of the devisee to whom it was limited. On the death of *Elizabeth*, her share reverted to the appellants, as the heirs at law of the testator ; or if it is considered as having become absolute in *Elizabeth*, by the circumstance of her being the last survivor of the daughters, still, as that circumstance at the epoch of the deed under which the defendant claimed, was not ascertained, but contingent, *Elizabeth* had a disposable interest, only to extent of her life estate. The doctrine of *estoppel* cannot apply. *Elizabeth* had, at the time of the deed, a life estate in the premises, and the court will intend that one deed was designed to operate on that life interest. 3 *Com. Dig.* 84. On this hypothesis, *Elizabeth* having died, the appellants became entitled to the estate, as her

heirs at law. In either view, the judgment must be reversed.

BUCHANAN, Ch. J., delivered the opinion of the court.

It is a general rule in the construction of wills, that a limitation, which may operate as a remainder, shall not be construed an executory devise; and we can perceive nothing in the devise of *Nathaniel Giles* to his five daughters of the premises, for an undivided part of which this suit was brought, to take it out of the operation of that rule.

If the devisees took estates in fee simple, as has been contended, as in strictness, a remainder cannot be limited after a fee simple, the limitation over might be construed to take effect by way of executory devise, by which means, being a disposition by will, which is more favored in construction than a deed, a fee simple or other less estate, may be limited after a fee simple. But in *Newton, et al. vs. Griffith, et al.* 1 *Harr.and Gill*, 111, the whole doctrine applicable to this case was ably discussed at bar, and fully considered and examined by the court. There the devise was, by a father, of certain land to his son *George* and his heirs, and of certain other land to his son *Joseph* and his heirs; and in case either of them "should die, having no lawful issue or heirs of his body," then the surviving son "to have his deceased brother's part of the land," to him and his heirs; and in case both sons "should die, leaving no lawful heirs," then all the lands to go to the testator's three daughters, *Sophia, Sarah,* and *Nancy,* to be equally divided between them; and it was held, that the two sons, *George* and *Joseph,* as the law stood before the act of 1786, *ch.* 45, (the act to direct descents,) took estates tail general in the lands respectively devised to them, with cross remainders in tail general, remainder to *Sarah, Sophia,* and *Nancy,* for life. Here the devise is, by a father, in these words: "I give and beneath the whole of my estate, both real and personal, unto my five daughters, by the names of *Hannah, Sarah, Elizabeth, Caroline,* and *Charlotte,* to them and their heirs forever, to be equally

divided amongst them; and it is my will, that if either of the said children die without issue, lawfully begotten of their body, in that case, the part of the said child, be equally divided among my surviving daughters." And without travelling through the multitude of authorities relating to the subject, but relying upon the decision in the case of *Newton, et. al. vs. Griffith, et. al.*, from which, in principle, we think this case cannot be distinguished, it is our opinion that the devisees did not take defeasible estates in fee simple, and that the limitation over cannot be construed to operate by way of executory devise; but being before the act to direct descents, that they took estates tail general, with cross remainders, under the limitation over to the survivors. It has been ingeniously attempted to distinguish this case from *Newton and Griffith*, by construing the limitation over to the survivors, to be for life; and then contending that the limitation for life to the survivors, who were necessarily persons in *esse*, shows that the testator intended a definite failure of issue, that is, a failure of issue at the time of the death of the devisee; on whose decease, without issue, the land devised to her, was to go to the survivors, upon the ground that he must have intended the limitation to take effect during the life in being, and consequently, could not have meant an indefinite failure of issue. But the rule is, not that the limitation over must take effect, within a life in being, but that the contingency on which it is made to depend, must happen, if at all, within the compas of a life or lives in being, and twenty-one years, and a fraction afterwards. Upon that distinction, which, when examined, will be found to be a very clear one, and the argument drawn from the circumstances of the limitation being for life to the survivors, though very specious, yet not to be sustained, one branch of *Newton and Griffith* was decided. The limitation over to the three daughters, on the contingency of the sons dying without issue or heirs of their bodies, was of an estate for life, to persons in being, just as strong as a limitation over to a survivor for life, which is

but a limitation for life to one in being, and the limitation over to the daughters, was held to operate, not by way of executory devise, but by way of remainder, after estates tail vested in the sons, and not to restrict the words, "leaving no lawful heirs of their bodies," to mean a failure of issue, at the death of the surviving brother; and cannot well be distinguished from the principle of the cases of *Denn vs. Shenton, Cow.* 410, and *Barlow vs. Salter,* 17*th Ves.* 479, there cited. Construing the limitation over to the survivors in this case, to be in fee simple by force of the words, "the whole of my estate," in the beginning of the devise, and carrying the word estate on to the limitation over, or in fee tail by implication of law, and the question whether the devisees took estates tail, with cross remainders, is clear of difficulty. But treating it (as has been done by the counsel for the appellant in argument) as a limitation for life only, then *Elizabeth,* under the authority of *Newton and Griffith,* took the portion of the real estate devised to her in fee tail general, and if the devisees had not been the heirs at law of the testator, would, on the death of *Charlotte,* without any descendant then living, have become entitled to one-fourth of the portion devised to her, by way of remainder for life, with reversion in fee to the heirs at law of the testator. But the devisees, being also the heirs at law of the testator, the life estate in the fourth of *Charlotte's* portion, which survived to *Elizabeth,* merged in the inheritance, and she became entitled to that fourth in fee simple absolute. There being, in this case, no survivor over, of a survived share, under the general rule, that where there are no particular and sufficient words used for that purpose, surviving shares, will not survive again, and particularly in relation to devises of real property. *Woodward vs. Glassbrook,* 2 *Vernon,* 388. *Worlidge vs. Churchill and others,* 3 *Brown's Ch. Rep.* 465. Having thus a fee simple or a fee tail, in one-fourth of a portion devised to *Charlotte,* according as the limitation over in the devise is construed, and an estate in tail, in her own original portion, which under the partition made between her

three sisters and herself, after the death of *Charlotte*, were assigned to her as her portion of the estate derived from her father, her deed made afterwards on the 16th of May, 1797, to *John Stump*, passed to him a good and sufficient title in fee simple, to the land therein mentioned, and so assigned to her upon the partition, and the plaintiffs are not entitled to recover.

JUDGMENT AFFIRMED.