JAMES TURNER and others, *vs.* CHARLOTTE WITHERS and others—and CHARLOTTE WITHERS and others, *vs.* JAMES TURNER and others.

WILLS, CONSTRUCTION OF: CONTINGENT REMAINDERS: DESCRIPTIO PERSONÆ: DESCENT AND PURCHASE: DEFEASANCE: PRESUMPTIONS.—J. C. died in 1808, leaving a last will and testament, wherein he devised his real and personal estate to his wife and his five children, A, B, C, D and E, share and share alike, viz., to each one-sixth part thereof for life, and in case of the death of either of said children, without children or descendants alive at his or her death, that the part of said estate devised to such child or children so dying, should be equally divided among his remaining children, during the term of their natural lives; and in case of the death of any of said children, leaving any child or children alive at his or her death, or any descendant of such child or children, that the part of said lands which such child or children so dying should be entitled to for his or her life, should be equally divided between them *per stirpes*, and not *per capita*. The widow, who had renounced all her rights under the will, being dead, and A having also died in 1809, without issue, in 1811, B, C, D and E made a division of all said real estate between them, including the share of A. B, one of the daughters, having married L., whom she survived, died in 1852, leaving children and descendants of deceased children, among whom the one-fourth part allotted to her in the division, was divided under proceedings in the Circuit Court for Baltimore county. By the original division, 1,174 acres, near Parkton, Baltimore county, became the property of C, in severalty for life, with remainder to those entitled under the will of J. C. C died, leaving no children or descendants, in July 1860. The questions arising upon these facts, are upon the proper division of the real estate held by C at her death, under the will of J. C. HELD:

1. As to the original share of C:

1st. That by the plain words of the will, the estate of C was for her life only, and the limitation over after her death, was a contingent remainder, and vested on the death of C; and that D and E, who are the only remaining children of the testator, take as tenants for life.

2nd. That the parties taking the remainder take by purchase as devisees under the will, and must answer the description of the parties named as devisees, and it is clear that no one can take except a child of the testator.

3rd. That the children of B do not answer this discription, and cannot claim as devisees, nor can they claim by descent from B; for the estate in remainder is given for life only.

4th. By the subsequent clause of the will, the children of B take nothing except the "part to which their mother was entitled for life;" but B was not entitled to any part of C's share, she not having survived her.

5th. The estate limited by the will to the children and descendants of B, is a contingent remainder in fee, which must vest *eo instanti* on the death of

B, or never; they cannot therefore take under this clause any part of the lands of C.

6th. That the above construction of the provisions of the will is in no respect altered by the last clause, which limits the whole estate to John Gwynn, in fee, in case of the death of all the children of the testator without issue; and that the words of this limitation are to be understood in their limited and restricted sense, and import a failure of issue at the time of the death of the devisees for life; they mean *when all the children die without issue, as expressed in the other part of the will.*

7th. The devise over is not too remote; and it is defeated when any of the children have died leaving issue.

8th. Upon such a construction of the devise over to Gwinn, no question of *implication* arises,—the law being well settled, that upon such a devise over no estate tail can be implied.

2. As to the share or part which accrued to C upon the death of A:

1st. That under the devise to children and descendants of the tenant for life, all the estate of the mother will pass, as well her accrued share as her original share.

2nd. That the will carried to the surviving children of the testator, on the happening of the contingency there named, as well the accrued as the original shares.

CROSS-APPEALS from the Equity Side of the Circuit Court for Baltimore county.

The bill of complaint in this case was filed by James Turner and others against Charlotte Withers and others. The questions involved arise upon the construction of the will of James Calder, late of Baltimore county. The allegations of the bill, the material portions of the will and the facts of the case sufficiently appear from the opinion of this Court.

The will was duly attested by three witnesses. The testator died in September 1808, and the will was admitted to probate in the same month.

The Judge of the Circuit Court (PRICE, J.) filed his opinion, deciding: that George Calder and his sisters took life estates under the will of their father, James Calder, and not estates in tail or fee, and that the devise over to John Gwynn is not void as being too remote; and that the testator, in the clause of his will where he uses the words

Turner, *et al.*, *vs.* Withers, *et al.*

"my remaining children," intended his children who remained alive or survived when the contingency happened, but that a share having once survived will not survive again.

On the 29th of April 1862, the Court passed a decree, adjudging that there should be a partition of the land of which Margaret Park died possessed, among the parties to this suit, so that two parts thereof in five parts to be divided, should be allotted to Sarah Turner for life, and at her death to her children or descendants *per stirpes*, and if she should die without chillren or descendants then living, then to the heirs-at-law of James Calder. Two other of said five parts were allotted to Charlotte Withers for life, with similar remainders over. And the remaining fifth part was ordered to be divided into three equal parts, one part whereof was allotted to Sarah Turner, in fee, one part to Charlotte Withers, in fee, and the remaining third to be divided into six equal parts among the defendants, heirs-at-law of Mary Little, and a commission was decreed to be issued to five persons to divide said land in conformity with said decree. On the 3rd of March 1862, the commission issued, and on the 29th of April 1862, an appeal was taken by both complainants and defendants.

The cause was argued before Bowie, C. J., and Bartol, Goldsborough and Weisel, J.

*Wm. S. Waters*, for Sarah Turner and her representatives, and *A. W. Machen*, for Charlotte Withers and her representatives:

I. The will in this case expresses the intent of the testator in clear and apt words, and all the separate provisions therein are consistent with each other, and with the general intent.

In reference to this state of the cause, the following general rules are applicable:

1st. The intention of the testator is the object to be attained in the construction of wills.

2nd. Rules of construction are never invoked when the intention clearly appears from the express language of the will. They apply only where there is doubt.

3rd. No doubt is ever held to exist where the testator expresses his intention in apt and clear language, and all the several intents of the will are so set out as to be consistent with each other, and each and all of the several intents consistent with the general intent.

4th. If the will expresses the intent of the testator clearly and consistently, the express language of the will is only modified for the purpose of carrying out some general intent inconsistent therewith, when this general intent is clearly and unequivocally expressed, and there is no other mode of gratifying it.

II. Margaret Park has a clear life estate given her by the will above named. The question is, how is it disposed of at her death? She died "without leaving any children or the descendants of children alive at her decease." The contingency has then arisen upon which "the part or parts of the land devised to her," shall be equally divided between the testator's "remaining children for life." The will declares itself to this extent and no farther. He who claims in the character of devisee, must answer the description given of that character in the will. Whatever is meant by the word "remaining," no one can take by purchase the part of Margaret, unless it be a child of the testator. The children of Mary Little do not answer that description. Those children, then, if they take by virtue of this provision, must take by descent from Mary, which is impossible, as it never was intended that Mary should have more than a life estate. *Winterton vs. Crawford*, 1 *Rus. & M.*, 407. *Milsom vs. Audray*, 5 *Ves.*, 465. *Buckle vs. Fawcett*, 4 *Hare*, 536, 542. *Beck vs. Burn*, 7 *Beav.*, 492. *Parr vs. Parr*, 1 *My. & K.*, 649. *Jackson vs. Staats*, 11 *Johns.*, 337. *Jackson vs. Thompson*, 6 *Cow.*, 178. *Lushington vs. Bolders*, 13 *Beav.*, 418. 17 *Eng. L. & E. Rep.*, 507. *In Re Corbett*, 6 *Jur. N. S.*, 339, (1860.) *Carver vs. Burgess*, 31

*Eng..L. & E. Rep.*, 529. McDonald *vs. Bryce*, 16 *Beav.*, 581. 17 *Eng. L. & E. Rep.*, 305. Neathway *vs. Reed*, 3 *De G. M. & G.*, 18. 17 *Eng. L. & E. Rep.*, 15.

III. By the rules of law, Mary never had or could have had any interest in the part of Margaret, whatever may be the meaning of the word "remaining," and conceding it to be intended in the sense of "other." The interest devised upon the death of Margaret, is a contingent remainder. The contingency has a double aspect. The remaining children, up to Margaret's death, had no estate or interest. The fee, until then, was in the heirs-at-law, to be divested upon the happening of the contingency. This could not be until Margaret's death. Then, for the first time, the will operates to pass all that remained after Margaret's death in the part in which she had a life interest. It vests *eo instanti* or never. And if the testator intended to include the children who were dead under the denomination of remaining children, the estate which would vest in Mary after the death of Margaret, would be a life estate after she was dead,—a simple impossibility in fact and in law. 1 *Fearne Con. Rem.*, 223, 235, 273. 2 *Id.*, 128. *Luddington vs. Kime*, 1 *Ld. Ray*, 203.

IV. The word "remaining," however, does not mean "other." It has a distinct meaning of its own. The word "other" is relative, and means every one of a class except the one named. The word "remaining" means those who are left behind, and does not necessarily include all the others of the class, and forasmuch as the testator has used the word in connection with the devise to them of an estate for life, it must follow that he intended those that were living, or his language is absurd. If the word can be so construed, it will be construed to have a consistent and sensible meaning, rather than an absurd one. If the testator had said, "in the case of the death of either of said children, then to the descendants or issue," then there might have been some plausibility in construing the word to mean "other." See cases as cited second above, and *Dick vs. Lacy*, 8 *Beav.*, 214.

V. There is no other language in the will having the force to carry any of the part of Margaret to the descendants of Mary, either by descent or purchase. It is provided by the will, that the part or parts of the lands which the testator's child so dying shall be entitled to for his or her life, shall, if such child have descendants at his or her death, vest in their descendants. But, as will appear by the above propositions, no part of the share of Margaret can be considered as coming within the description of land to which Mary "was entitled for her life," and therefore cannot pass by virtue of this provision. 1 *Preston on Es.*, 75, 76.

VI. The clearly expressed will of the testator is, that upon the death of Mary, leaving descendants, an estate in fee shall vest in those descendants. The estate limited is a contingent remainder, to vest *eo instanti* upon the death of Mary, or never, and is limited upon the life estate of Mary as a particular estate. No one can claim by virtue of this provision, except he or she answer the description of descendants or children of Mary at the time of her death. 1 *Preston on Es.*, 74, 88, 92, 93, 119, 121, 122. 1 *Fearne Con. Rem.*, 281, 289. *Miller vs. Chapman*, 31 *Eng. L. & E. Rep.*, 336. *Festing vs. Allen*, 12 *Mees. & Welsb.*, 278, 279.

VII. These provisions in the will are entirely consistent with each other, and must be construed according to the meaning or intent which they carry upon their face, unless there be some general intent in the will, which renders it necessary to modify their meaning.

VIII. There is the greater necessity that the general intent should clearly appear, in order to modify the expressed particular intent, because the will in question is prepared with great care, and by one well skilled in the legal effect of language.

IX. The only language in the will, from which a general intent can be inferred of the character required, is that used in the devise over to John Gwynn. The general intent

HARVARD LAW LIBRARY

which has usually been gathered from words like this, is that the devise over shall not take effect until the issue of the first taker (the issue in this case of the children of the testator) are extinct, and in order to this result, in cases in some respects like this, the word "survivor" is held to mean "other." This rule has its illustration in the case of *Doe vs. Wainright*, 5 *Term Rep.*, 627, and the cases referred to in 2 *Jarman on Wills*, 586, 2 *Eng. Ed.* of 1855.

X. In regard to the rule established by these cases, the following observations will show its inapplicability to this case:

1st. In all cases where this rule is applicable, the devise or bequest is in the first place to the first taker (as children of the testator in this case) of an estate of inheritance or other absolute estate, and not an estate for life, and the devise or bequest over between the first takers, upon the death of either without children, is of an estate of inheritance or other absolute estate, and not an estate for life, and it was therefore only necessary to change the word "survivor" unto "other," and the general intent was effected. In the present case, however, the result could only be attained by converting the express estates for life into estates tail, with cross remainders between the children in tail. This cannot be done by virtue of the rule established in these cases. If those estates are to be thus changed to effect the general intent, it must be done upon other considerations.

2nd. The devise over to John Gwynn, in this case, gives to John Gwynn a contingent remainder, and not an executory devise. It would vest in him whenever all the children should be dead without issue. It is defeated if any of them died leaving issue. The devise over must be connected with the previous devise, and be held relative to it, and means when all the children are without issue, as expressed in the other part of the will. *Blackborn vs. Edgley*, 1 *P. W.*, 600. *Baker vs. Tucker*, 2 *Eng. L. & E. Rep.*, 7, (3 *House of Lords Cases.*) *East vs. Twyford*, 31 *Eng. L. & E. Rep.*, 84, (*Ld. St. Leonards, in House of Lords.*)

3rd. In this case there is an express devise for life to the children of the testator, and an express devise in fee to such of the issue who answer the description of descendants at the death of each, and such devises to the issue are ample to exhaust all the line of issue of all the children before the estate will go over to Gwynn, without giving any effect to the devise over in this case, therefore the devise over implies nothing more than has already been done by the previous devises. *Cases cited No. 2 above. Foster vs. Hays,* 4 *El. & Bl.,* 717. *Volant vs. Carter,* 4 *El. & Bl.,* 173. *Egerton vs. Massey,* 3 *C. B.,* (*N. S.,*) 349. *Goodright vs. Dunham, Doug.,* 264. *Simpers' Lessee, vs. Simpers,* 15 *Md. Rep,* 189. 2 *Fearne,* 272. *Chelton vs. Henderson,* 9 *Gill,* 432. *Tarbuck vs. Tarbuck,* 2 *Jar. on Wills,* 376. *Doe vs. Galleno,* 3 *Ad. & El.,* 340.

4th. The last observation will be equally true, if the devise over to Gwynn be an executory devise, or a contingent remainder. *Tongue vs. Nutwell,* 13 *Md. Rep.,* 416. *Torrence vs. Torrence,* 4 *Md. Rep.,* 11. No estate tail can be implied from a gift over upon a dying without issue living at the death, which, according to *Goodwright vs. Dunham,* 2 *Doug.,* 264, and other cases above cited, the limitation to Gwynn in effect is. *Green vs. Ward,* 1 *Russ.,* 262, 264. *Addison vs. Busk,* 14 *Beav.,* 459. *Moneypenny vs. Dering,* 7 *Hare,* 588. 8 *Eng. L. & E. Rep.,* 42. Same case on appeal, 15 *Eng. L. & E. Rep.,* 551. *Lethienllier vs. Tracy,* 3 *Atk.,* 796. *Ranelaugh vs. Ranelaugh,* 12 *Beav.,* 205. 2 *Jar. on Wills,* 2nd *Eng. Ed.,* 465, 471.

5th. As the implication contained in the devise over, upon any other theory than that contended for above, could be gratified only by a change of the life estates of the first takers into estates tail with cross-remainders, although this might have effected the result as the law was before the Act to direct descents, yet it could effect no result since that, because if these estates were changed into estates tail, the Act to direct descents would at once make them estates in fee, and no object would be gained, no nearer approach to

the general intent would be made, and the expressed will of the testator would be destroyed for no purpose. *Chelton vs. Henderson*, 9 *Gill*, 432.

6th. It is a rule of law, said by a very high authority to have no exception whatever, "that a precedent estate devised by express words cannot be lessened, increased or altered by implication." *Ginger dem. White vs. White, Willes*, 355. And the estate devised to each of the five children of the testator, being here expressed to be a life estate in terms admitting of no doubt, could not, consistently with that rule, be enlarged or changed into an estate tail by implication from the devise over to Gwynn. 1 *Preston on Es.*, 191. 2 *Do.*, 527. *Thornhill vs. Hall*, 2 *Cl. & Fin.*, 22, 36. *Tongue's Lessee vs. Nutwell*, 13 *Md. Rep.*, 416.

7th. The rule which requires the special intent to yield to the general intent, is not a rule of law, but a rule of construction. In applying it, the Court considers the circumstances of the particular case, will take notice of the entire change wrought by the Act to direct descents, and will not apply the rule, unless in the particular case the general intent would be furthered by it; much less would they apply it in a case like this, when the result would be to destroy not only the special, but the general intent, and the refusal to apply it would establish both.

8th. Although it be true that the construction now contended for, might produce an intestacy in case the survivor of the two remaining sisters should die without children, and an intestacy might be avoided upon adopting the view of the other side, yet that is but an inconvenience which the testator might have avoided if he had desired, and it in no way interferes with the operation of the general intent expressed by the testator in the devise over or otherwise.

XI. By giving the construction here contended for, every expression of the will can be gratified, every intent, special and general, carried out, and the Court never will in such

a case, do violence to the express language of the will, to remedy any inconvenience, or to supply any supposed wish of the testator, not clearly expressed by him. *Lees vs. Mosley,* 1 *You. & Coll. Rep.,* 589. *Slater vs. Dangerfield,* 15 *Mees. & Wels.,* 263. *Greenwood vs. Rothwell,* 5 *M. & G.,* 628. 44 *Eng. L. & E. Rep.*

XII. The next question for this Court is, what is the disposition to be made of that part of Margaret's share which she derived from George, who died without children? Sarah Turner and Charlotte Withers, and their representatives, contend that it passes over to them in the same manner as the other part of Margaret's share; and upon this proposition the following points are presented:

1st. Under some circumstances it has been decided, that an estate having once survived, will not survive again. This has never been done when the intention is expressed, that the survived, as well as the original share, should pass over. The peculiar language used in this will, shows this to be the intent of the testator. The devise to the remaining children upon the contingency now presented in Margaret's case, is of "the part or parts of his land and estate devised to such child or children so dying." This language includes all the property and estate devised to Margaret by the will, and forasmuch as the part of George which came to her was devised to her by the will, it includes this. *Hoxton vs. Archer,* 3 *G. & J.,* 199. *Goodman vs. Goodman,* 1 *De Gex & S.,* 695, 699. *Douglass vs. Andrews,* 14 *Beav.,* 347. *Milsom vs. Audray,* 5 *Ves.,* 465. *Leaming vs. Sharits,* 2 *Hare,* 14. *Eyre vs. Marsden,* 4 *My. & Cr.,* 231. *Paine vs. Benson,* 3 *Atk.,* 78.

2nd. Margaret, at the time of her death, is found in possession of a certain portion of the testator's estate, which had been devised in the first place to George, her brother. How did she get that part? Not by descent, nor in any other manner than by the provisions of the will; consequently this, just as much as the share given originally to her, is a part of the testator's land devised to Margaret, and upon her death without issue, is directed by the clause

in question to be equally divided between the remaining children of the testator.

3rd. Moreover, the testator uses precisely the same language in devising to the "remaining children" upon the death of any one of them without children, as he uses in devising "to the child or children, or the descendants of such child or children," of his said sons and daughters, as died leaving descendants at the time of his or her death. The two devises are counterparts of each other. If the survived share does not pass to the remaining children, it could not pass to the descendants of the testator's children. The language must be construed to mean the same in both devises. See cases cited first above. *Verndergught vs. Blake*, 2 *Ves.*, *Jr.*, 535.

4th. The devise to the remaining children is for life, and is given in the same manner and for the same estate as the original share is given, showing that the testator had the same intention as to both.

5th. Independently of the force of the language used itself, it is apparent by the devise over to John Gwynn, that the testator intended that the whole estate should go over to him at the same time. That time would arrive when all the children of the testator had died without children or descendants living at their death, and could only occur upon the last child so dying, after all the others had so died previously. If the construction here contended for should not prevail, upon the event upon which the land would pass over to Gwynn, the greater part of the estate would have passed to the heirs-at-law of the testator in possession, and it would be required to dispossess them before the property could pass over. Cases cited first above. *Doe, Less. of Clift, vs. Birkhead*, 4 *Exch.*, 110. *Tarbuck vs. Tarbuck*, 2 *Jar. on Wills*, 376.

*Geo. Wm. Brown* and *F. W. Brune*, for the heirs of Mary Little:

I. The general intent of the testator was manifestly to establish an equality among his five children and their de-

scendants. He makes no preference among them, and does not even name them in separate clauses, but provides for all alike, by the same general terms.

The desire to establish an equality among his children and their descendants is shown—1st, by his dividing his personal property equally among his children, after providing for his wife; 2nd, by his dividing his land equally among his children for their lives, subject to the life-interest of his wife; 3rd, by devising the share of any child dying without descendants then surviving, to be equally divided among his remaining children for their lives; 4th, by his directing that at the death of any child who shall leave descendants then surviving, the part of his land which such child shall be entitled to for life, shall go to such descendants and their heirs, *per stirpes;* 5th, by providing that in case of the death of all his children without issue, all his estate shall go to his friend, John Gwynn; and 6th, by giving no preference to any child, and not even naming them separately, but by providing for all by the same general terms.

This intention to provide equally for his children and their descendants, can be carried out only by giving to the expression "my remaining children," the meaning "my other children," and not the meaning "my then surviving children," as contended for by complainants. If the former construction be adopted, then the will, on the death of any child without issue, creates a remainder as to the whole of such child's share, both original and accumulated, to the other children and the issue of a deceased child, such issue to take a child's share; that is, the will creates cross-remainders among the children of the testator, with remainders in fee to their respective issue. Thus, on the death of Margaret Park, her original and accrued share passed to the surviving sisters for life, with remainder in fee, on their decease, to their issue respectively, and the children of her deceased sister, Mary Little, took in fee the portion to which their deceased parent, if living, would have been entitled.

Turner, *et al.*, *vs.* Withers, *et al.*

Thus perfect equality in every possible case is established among the children and their descendants; and the testator, as he certainly intended, does not die intestate as to any part of his estate.

The word "remaining" does not necessarily nor properly mean "surviving," and if it is to be so construed, great inequality is necessarily created; and this inequality is greatly increased if, as the complainants contend, the shares accumulated by survivorship in any child for life, pass on the death of such child to her descendants. According to this construction, the entire share left to Margaret Park, original and accumulated, goes to the surviving sisters and their children, to the exclusion of the children of Mary Little. And if Mary Little had died before her brother George, her children would have had no interest in his share, and the inequality would have been still greater. And if one of the now surviving sisters should die without issue living, then the whole of her share, original and accumulated, would go to the last survivor for life, and after her death to her descendants, to the exclusion of Mary Little's children. Such are the inequalities created by the will, if the construction of the complainants be correct.

It was also the intention of the testator to dispose of his land among his children and their descendants, provided any of his descendants were living at the death of any of his children. But this intention might not be carried out, if the construction of the complainants is correct. If, for instance, the last surviving child should die without issue then living, her share would not be devised at all. Not to the other brother and sisters, because they would be deceased. Not to their descendants, because they could not take except from their parents. Not to John Gwynn, provided the issue of any child were living. The testator would then have died intestate as to such portion. But by our construction, the share of such survivor, original and accumulated, would pass to the descendants, *per stirpes*, of the other children, and the intention of the testator would be gratified.

If all the children should die without issue, then the estate is devised to John Gwynn. This last devise is of great importance in showing the meaning of the testator. The will is not drawn with professional skill, and was the work of the testator himself, who was a land-surveyor and not a lawyer, but his meaning is made to appear with sufficient clearness. The intention thus manifested by the whole tenor of the will, and especially by the devise over to Gwynn, is sufficient to prevent the general rule as laid down in *Hoxton vs. Archer*, 3 *G. & J.*, 213, that surviving shares do not survive again, from applying, and also, on the death of any child without issue living, to create a cross-remainder as to the share of such child, original and accrued, among the other children for life, remainder in fee to the issue of any deceased child.

The word "remaining" does not properly mean "surviving," it means "left, left behind, residual, residuary, outstanding, unconsumed." These are all the meanings given in *Roget's Thesaurus*. Here it means the "rest, residue or remainder" of the children before named, that is, the testator's other children; if he had meant the children remaining alive, he would have said so. See also *Worcester's Dict.* and *Webster's Dict.*

Even if the word "surviving" had been used instead of "remaining," it should be construed "other," as has been done in many similar cases by courts of the highest authority, in order to carry out the intention of the testator. And if the devise had been "to my surviving children," it would embrace the children living at the death of the testator, and thus in this case would be equivalent to "other," because all the children were then living. This doctrine is well settled in devises of land, although there is a difference among the authorities in bequests of personalty. *Ross vs. Drake*, 37 *Penn.*, 373. *Edwards vs. Simonds*, 6 *Taunt.*, 213. *Doe dem. Long vs. Prigg*, 8 *B. & C.*, 231. *Moore vs. Lyons*, 25 *Wend.*, 119. 4 *Kent*, 203, *note c. Van Giessen vs. Howard*, 3 *Halst. Ch.*, 462. *Martin vs. Kirby*, 11

*Grat.*, 67.   2 *Jar. on Wills*, 631.   *Cripps vs. Wolcott*, 4 *Madd.*, 11.   *Roebuck vs. Dean*, 2 *Ves.*, 265.   *Drayton vs. Drayton*, 1 *Dess.*, 324.

II. The Court below held, that although a surviving share will not survive again, it passes under the will to the descendants of a surviving child. There can be no good reason for such a distinction, for in neither case does the will specify surviving shares. If a surviving share does not survive again, it should not pass to descendants.

The language of the will favors this view, for while "the part or parts" of a child dying without issue are to survive, only "the part" of a child having issue is to pass to such issue. If the words "part or parts" exclude a surviving share, is it not clear that the word "part" must also do so?

And the Court also erred in holding "remaining children" to mean "then surviving children."

We contend, then, if the construction which we have given to the will be not correct, that the true construction is—1st, that Margaret had only a life estate in her portion of George's share, and, on her death, said accrued portion descends to the heirs-at-law of James Calder; and 2nd, that Margaret's original share is devised for life equally among her four brothers and sisters, George, Mary, Sarah and Charlotte, but that the will operates no farther upon it. As George and Mary are both deceased, their portions of Margaret's original share descend to the heirs of James Calder, and on the decease of Sarah and Charlotte respectively, their portions of said share will descend in like manner. This construction is based on the idea that a surviving share cannot under the will survive again, nor pass to the descendants of a deceased child, and that "remaining children" means "other children."

This construction, while it does not carry out the intention of the testator in creating an absolute equality among the children and their descendants, does not widely depart from it.

III. If we are wrong in these positions, we contend that the limitation over to Gwynn, being after an indefinite failure of issue, is void, and renders the life estates given to the testator's children estates in tail, which, by the Act of descents, are converted into estates in fee.

IV. If none of the above constructions are sustained by the Court, we contend that, on the decease of Margaret Park, the original share devised to her passed to the then surviving children of the testator for their lives only, and after their decease, respectively, will descend to the heirs of James Calder, and that the accrued share of said Margaret, on her decease, descended to the heirs of James Calder. This construction is based on the idea that a surviving share cannot, under the will, either survive again, or pass to descendants, and also that the words "remaining children" are to be construed to mean "then surviving children."

V. The fifth construction to the will, is that given by the Court below, that on the decease of Margaret Park, her original share passed to the surviving children of the testator for their lives, remainder in fee to their descendants respectively, and that her accrued share descended to the heirs of James Calder.

VI. The sixth construction is that of the complainants, that on the death of Margaret Park, her original and accrued share passed to the then surviving children for their lives, remainder in fee to their descendants respectively.

The objections to constructions Nos. 5 and 6, are contained in the views presented by the defendants in maintaining their constructions Nos. 1 to 4 inclusive.

The following points, presenting our views of the law of the case, are respectfully submitted:

1st. A clearly expressed intention in one portion of the will, is not to yield to a doubtful construction in any other portion of the instrument. *Redfield on Wills.* 434. *Corugain vs. Kiernan*, 1 *Brad. Sur. R.*, 208. *Brown vs. Lyon*, 6 *N. Y.*, 419.

2nd. The rule, that the heir is not to be disinherited unless the intent to do so is very clearly expressed, in America, is extended to all the heirs of the testator, unless more remote than children, and their issue and representatives. *Redfield*, 434. *Downing vs. Bain*, 24 *Ga.*, 382. *Bender vs. Deitrick*, 7 *Watts & Serg.*, 284.

3rd. Where the general intent of the testator is clear, it overrides all mere technical and grammatical rules of construction. *Redfield*, 434. *Sorsby vs. Vance*, 36 *Miss.*, 564. *Rose vs. McHose*, 26 *Mo.*, 590. *Parks vs. Parks*, 9 *Paige*, 107. *Jackson vs. Housel*, 17 *Johns.*, 281. *Chase vs. Lockerman*, 11 *G. & J.*, 185. *Simpers vs. Simpers*, 15 *Md. Rep.*, 187.

4th. Where the strict technical and grammatical meaning of words will tend to defeat the obvious intent of the testator, it is allowable to give them a liberal or popular meaning. *Redfield*, 433, *note* 19. *De Kay vs. Irving*, 5 *Denio*, 646. *S. C.*, 9 *Paige*, 521. *Burtis vs. Doughty*, 3 *Bradf. Sur. R.*, 257.

5th. Where a will is drawn, as this was, by an unprofessional person, a technical construction will not be carried to the extent of defeating any obvious general intention of the testator. *Redfield*, 435. *Richardson vs. Noyes*, 2 *Mass.*, 56, 60. *Horner vs. Shelton*, 2 *Met.*, 194, 198. *Carr vs. Jeannerett*, 2 *McCord*, 66. *Carr vs. Green*, *Id.*, 75. *Brimmer vs. Sohier*, 1 *Cush.*, 118. *De Kay vs. Irving*, 5 *Denio*, 546. *Lamb vs. Lamb*, 11 *Pick.*, 375. *Inglis vs. Trustees*, 3 *Pet. U. S.*, 113. *Finley vs. King*, 3 *Pet. U. S.*, 346, 377. *Janney vs. Sprigg*, 7 *Gill*, 201. *Linsted vs. Green*, 3 *Md. Rep.*, 81.

6th. In order to reach the obvious general intent of the testator, implications may supply general omissions, and all inaccuracies of grammar, or impropriety in the use of terms, may be corrected, if the general purport of the instrument be clear and manifest. *Redfield*, 465. *Dew vs. Barnes*, 2 *Jones' Eq.*, 149. So words may be supplied, and the grammatical construction disregarded, in order to

conform to the clear intent of the testator, as indicated by the whole will. *Reed vs. Hancock*, 10 *Humph.*, 368. *Judge Williams*, 2 *Carter*, 449.

7th. The word "remaining," in this will, should be construed as "other." Even if the word "survivors" had been used, it would be construed "others." The rule is, that where a gift to the survivors of several legatees, limited to take place in a certain event, as their dying under age or without issue, is followed by a gift over, provided such event happens to all the legatees, the word "surviving" must be construed "others." This rule is established by various cases, and the reason assigned is, that otherwise the previous limitation (that is, as here, to descendants of deceased children) might fail before the event happened upon which the ulterior gift is to take effect, but by construing the word "survivors" "others," the whole will becomes coherent, and the final disposition takes effect upon failure of the prior gift in continuation, as it were, of the testator's general scheme. To apply this rule to this case, the testator cannot be supposed to mean to leave his estate to Gwynn on the decease of all his children without issue, and by a previous clause to cut off a portion of that issue, but must be understood to mean to provide in the first place for all such issue. Such a construction makes the whole will consistent and coherent. 2 *Jar. on Wills*, 586, (2nd *Eng. Ed.*, *W. & V.*, 1855,) and cases there cited. *Doe & Watts vs. Wainwright*, 5 *T. R.*, 427. *Wilmot vs. Wilmot*, 8 *Ves.*, 10. *Cursham vs. Newland*, 2 *Bing. N. C.*, 58. 2 *Scott*, 105. 4 *M. & W.*, 101. 2 *Beav.*, 145, 149. *Lowe vs. Land*, 1 *Jur.*, 377. *Cole vs. Sewell*, 4 *Dr. & War.*, 1. *S. C.* 2 *H. of Lords Cases*, 186. 12 *Jur.*, 927. If the word "remaining" is to be construed and understood as meaning "surviving," it means surviving at the death of the testator. *Barlow vs. Salter*, 17 *Ves.*, 478, 482. *Alton vs. Brooke*, 7 *Sim.*, 204. *Eyre vs. Marsden*, 2 *Ker.*, 564. 4 *M. & C.*, 231. *Winterton vs. Crawford*, 3 *You. & Coll.*, 565.

*Sugden's Law of Prop.*, 64 *Law Lib.*, 121 *margin.* . 4 *Kent's Com.*, 303.

8th. An ultimate gift over of the whole fund, upon the death of all the legatees without leaving issue, following after limitations to survivors of the share of any dying without leaving issue, not only divests the accruing as well as original shares of all, on the happening of the prescribed event, but also implies that the accruing shares of each shall be carried on from time to time upon the several intermediate deaths. 2 *Jar.*, 594, 2nd *Eng. Ed.* *Doe dem. Clift vs. Birkhead*, 4 *Exch.*, 110. *Douglass vs. Andrews*, 14 *Beav.*, 347. *Goodman vs. Goodman*, 1 *De G. & Sm.*, 695.

9th. The will creates cross remainders between the children of the testator for their respective lives, with remainders in fee to the issue of such children. 2 *Washburn on Real Prop.*, 233. *Sug. on Prop.*, 64. *Law Lib.*, 283. *Roe vs. Clayton*, 6 *East.*, 628. Same case in 1 *Dow.*, 384. *Cought vs. Holford*, *Cowp.*, 31. *Pheppard vs. Mansfield*, *Id.*, 797. *Watson vs. Faxon*, 2 *East.*, 36. *Doe vs. Webb*, 1 *Taunt.*, 234. *Twery vs. Harding*, 1 *R. & M.*, 636, (4 *Eng. Ch. Rep.*, 591.) *Vanderplank vs. King*, 3 *Hare*, 125. *Id.*, 1. *Cusham vs. Newland*, 2· *Beav.*, 145. *Ashley vs. Ashley*, 6 *Simons*, 358.

10th. If the proposition contained in No. 7 should not be sustained, we shall contend that the limitation over to Gwynn, being after an indefinite failure of issue in the descending line of the testator, is void, but renders the life estates given to the testator's children estates tail, which, by the act of descents, are converted into estates in fee. *Poole vs. Poole*, 3 *B. & P.*, 627. *Robinson vs. Robinson*, 1 *Burr*, 38, 40. *Jack vs. Featherston*, 9 *Bligh. N. S.*, 272. *Griffith vs. Newton*, 1 *H. & G.*, 115, 123, 125, 126. *Edelin vs. Worthington*, 9 *Gill*, 168. *Simpers vs. Simpers*, 15 *Md. Rep.*, 185, 186, 187, 188, and cases there cited. *Jackson vs. Dashiell*, 3 *Md. Ch. Dec.*, 257. *Hoxton vs. Archer*, 3 *G. & J.*, 212.

BARTOL, J., delivered the opinion of this Court:

James Calder, late of Baltimore county, died in the year 1808, leaving a last will and testament, executed on the 14th day of May 1807. This will was duly attested, so as to pass real estate. Those parts of the will, upon the construction of which the decision of these appeals depends, are as follows:

"I give and bequeath unto my wife, Margaret Calder, the one-sixth part of the rents and profits of all my lands during her life, in six equal parts to be divided, and the one equal sixth part of all my personal estate, after my debts and funeral expenses are paid, according to an agreement made between us previous to marriage.

"I give and devise to my son, George, and to my four daughters, Margaret, Mary, Sarah and Charlotte, all my lands, tenements, hereditaments and real estate whatever and wheresoever, during the term of their natural lives, to be equally divided between them, without impeachment of waste, and with full power to grant leases, reserving a reasonable rent of all or any part of the said lands for any term not exceeding the term of seven years, subject, nevertheless, to the above devise of one-sixth part of the rents and profits of my said lands to my wife, during her life.

"I also give to my said son George, and to each of my said daughters, the one equal sixth part of my personal estate, share and share alike with my wife.

"I further will and devise, that if my said son or either of my daughters shall die without leaving any children or descendants alive at his or her decease, the part or parts of my lands and estate devised to such child or children so dying, shall be equally divided between my remaining children during the term of their natural lives, without impeachment of waste, and with like power to lease the same, as above provided.

"I also will and direct, that at the death of any of my said children, who shall leave any child or children alive at his or her decease, or any descendant of such child or

children, the part of my lands which my child so dying shall be entitled to for his or her life, shall belong to, and I do hereby devise the same, unto the child or children of my child so dying, or to their descendants, as the case may be; if more than one, to be equally divided between them and to their heirs forever, *per stirpes*, and not *per capita*.

"In case of the death of all my children without issue, 1 give and devise all my estate to my friend, John Gwynn, and to his heirs forever."

The widow and five children of the testator survived him. The widow renounced her rights under the will, and died long since. George, the son, died in 1809, without any children, never having been married.

In 1811 the four daughters made a division between them, by metes and bounds, of all the real estate of the testator, including the interest of George. Mary, one of the daughters, having married —— Little, whom she survived, died in 1852, leaving children and descendants of deceased children, among whom the part allotted to her in the division was divided by proceedings in the Circuit Court for Baltimore county. No question arises upon those proceedings, and it is unnecessary to refer to them further, except to say, that by the original division two tracts of land, consisting of about 1,174 acres, near Parkton, in Baltimore county, became the property of Margaret Park, one of the daughters, in severalty for her life, and after her death, to be held in severalty by those entitled in remainder under the will of James Calder.

Margaret Park survived her husband, and died on the 1st day of July 1860, leaving no children or descendants.

The questions in this case are upon the proper division of the real estate held by Margaret under the will.

The only children of James Calder now living, are Sarah Turner, one of the complainants, and Charlotte Withers, one of the respondents, both of whom have children living, who are parties to this suit. The children and descendants of Mary Little are also parties.

Turner, *et al., vs.* Withers, *et al.*

The complainants, and Charlotte Withers and her representatives, contend, that by a proper construction of the will of James Calder, the land acquired thereunder by Margaret Park, that is, the one-fifth of his estate devised to her for life, and her one-fourth of George's share, which, on his death, survived to her, passed, on her death, to her two surviving sisters, Sarah Turner and Charlotte Withers, in undivided moieties for their several lives, and after their several deaths, will pass to their children or descendants who may be living at the time of their several deaths, in fee; the children or descendants of each to have the undivided moiety of their mother, *per stirpes*, and not *per capita*.

The judge of the Circuit Court adopted this construction of the will, and decreed accordingly, as to the original share or one-fifth part devised to Margaret by the will; but deciding that a share having once survived, would not survive again, decreed that the part of Margaret's estate which had accrued to her by the death of George, (being one-fifth thereof,) should be divided between the heirs-at-law of James Calder, to whom it had descended. From this decree all parties have appealed.

The cause has been argued with much ability and learning; and a great number of cases have been cited and relied upon in support of the various points and theories presented by the counsel in argument. Without attempting a particular examination of the various theories and rules of construction suggested by counsel, or entering upon an analysis of the cases cited in their support, we think the true construction of the will can be more easily and satisfactorily determined by a careful examination of the terms of the will itself, keeping in view the well-settled rules of law governing the questions before us; and aided in their application by reference to a few adjudged cases.

The question in dispute is, whether the children and descendants of Mary Little, deceased, are entitled to a share of the land of Margaret Park, devised under the will of

James Calder; and that question involves, *first*, the inquiry as to that part of Margaret Park's lands originally devised to her for life; and *secondly*, as to that part which accrued to her by the death of her brother George.

1st. As to the original share: By the plain words of the will the estate of Margaret Park was for her life only, and the limitation over after her death, is a contingent remainder. This is clear upon all the authorities. "It is a general rule in the construction of wills, that a limitation which may operate as a contingent remainder, shall not be construed an executory devise." *Hoxton vs. Archer*, 3 *G. & J.*, 211.

The remainder is limited with a double aspect,—if she leave any child or descendants alive at the time of her death, then to them in fee; if she leave none, (which is the contingency that has actually happened,) then the devise is to the *remaining children of the testator for life*. Who are the remaining children of the testator? Only Sarah Turner and Charlotte Withers. They therefore take, by the plain terms of the will, as tenants for life.

The counsel for the heirs of Mrs. Little, have contended that the words *remaining children*, are to be construed, not as meaning surviving children, but as *other* children, meaning all the other children of the testator named in the will; and many cases have been cited to shew that the Courts, in order to carry out the intention of a testator, have construed the word *surviving* as synonymous with *other*. It is unnecessary to refer to those cases, or to discuss the principles upon which they rest. They seem to us to be inapplicable here, and afford no aid in the construction of this will. The testator gives the remainder, upon the death of Margaret, to his "remaining children for life." The parties taking the remainder, take by purchase as devisees under the will, and must answer the description of the parties named as devisees, and it is clear that no one can take *except a child of the testator*. The children of Mary Little do not answer this description, and cannot claim as devi-

secs. See *Melson vs. Aubrey*, 5 *Ves.*, 465. *Winterton vs. Crawford*, 1 *Russ. & M.*, 407, (4 *Cond. Eng. Ch. Rep.*, 489.) *Cover vs. Burgess*, 31 *Eng. L. & E. Rep.*, 529. *Northway vs. Reed*, 3 *De G. M. & G.*, (17 *Eng. L. & E. Rep.*, 150.) *Leeming vs. Sherratt*, 2 *Hare*, (24 *Eng. Ch. Rep.*, 14.) Many other cases might be cited.

From these authorities, it is clear that the children of Mary cannot take as devisees under this clause of the will; nor can they claim by descent from Mary; for the estate in remainder is given for life only.

As we have said, the interest devised on the death of Margaret, is a contingent remainder, and must vest, if at all, on the death of Margaret.

To adopt the construction contended for, and to suppose that the testator intended to include the children who were dead, under the denomination of remaining children, would have the effect of vesting in Mary a life-estate after her own death, which cannot be. *Luddington vs. Kime*, 1 *Ld. Raym.*, 203.

We are of opinion, that by the words *remaining children*, the testator intended those children who might remain alive at the death of the first devisee for life—surviving children. This is the natural and ordinary meaning of the words, and we find nothing in the will to warrant any other interpretation.

By the subsequent clause of the will, the children of Mary take nothing except "the part which their mother was entitled to for life;" but Mary was not entitled to any part of Margaret's share, she not having survived her. Besides, the estate limited by the will to the children and descendants of Mary, is a contingent remainder in fee, which must vest *eo instanti* on the death of Mary, or never; they cannot therefore take, under this clause, any part of Margaret's lands. 1 *Preston on Estates*, 74, 75, 76, 88, 92, 119, 121, 122. 1 *Ld. Raym.*, 203. 31 *Eng. L. & E. Rep.*, 336, *Miller vs. Chapman.* 12 *M. & W.*, 299, *Festing vs. Allen.*

It follows, from what has been said, that by the true construction of those provisions of the will to which we have referred, the share devised to Margaret would devolve, at her death, upon the two remaining children of the testator, Sarah Turner and Charlotte Withers, for life, to the exclusion of the children and descendants of Mary Little. In this respect, the intent of the testator is expressed in clear and unambiguous terms. It is possible, that if he had foreseen the event which has happened, he might have so framed his will as to give to the children of Mary a share in these lands; but he has not done so, and the Court cannot do violence to the express language of the will, to supply any supposed wish of the testator; to do so, would be to make a will for the testator.

Nor do we think the construction of these provisions of the will is in any respect altered by the last clause, which limits the whole estate to John Gwynn, in fee, in case of the death of all the children without issue. This clause, it is argued, manifests a general intent of the testator in favor of all his children and descendants of his children, which controls the particular intent expressed in the previous parts of the will; and in order to carry out that general intent, cross-remainders in tail between the children will be implied.

This construction is based upon the assumption, that the limitation over to Gwynn is after an indefinite failure of issue. Without meaning to express the opinion, that the devise over to Gwynn, even if it were so construed, would raise such a necessary implication as to enlarge or defeat the estate, before expressly limited, a majority of the Court are of opinion that the words of this limitation, when read, as they must be, with the context, are to be understood in their limited and restricted sense, and import a failure of issue at the time of the death of the devisees for life; they mean *when all the children die without issue, as expressed in the other part of the will*. The devise over is not too remote, and it is defeated when any of the children have died

leaving issue. On this question we concur with the views expressed by the judge of the Circuit Court. The rules of construction in cases like this, are very well expressed in *Lewis on the Law of Perpetuity*, 52 *Law Lib.*, 183, 184. We refer also to *Blackburn vs. Edgerly*, 1 *P. W.*, 600. *Baker vs. Tucker*, 2 *Eng. L. & E. Rep.*, 7. *East vs. Twyford*, 31 *Eng. L. & E. Rep.*, 84. *Goodright vs. Dunham*, 1 *Doug.*, 264. Upon this construction of the devise over to Gwynn, no question of implication arises. The law being well settled, that upon such a devise over, no estate tail can ever be implied. 1 *Jar. on Wills*, 490, *m.*

2nd. We proceed to the consideration of the question as to the share or part which accrued to Margaret by the death of George. On this question we dissent from the views expressed by the judge of the Circuit Court. The general rule is well established, "that where there are no particular and sufficient words used for that purpose, surviving shares will not survive again, and particularly in relation to real estate." *Hoxton vs. Archer*, 3 *G. & J.*, 213. 2 *Jar. on Wills*, 620. Yet, we think the case does not fall within the general rule. In our opinion, there is upon the face of this will a clear intention expressed, that the survived shares, as well as the original share of a child dying without children or descendants, shall pass to the surviving children. There seems to be little question that, under the devise to children and descendants of the tenant for life, all the estate of the mother will pass—as well her accrued share as her original share—because the gift, in that event, is of "the part which the child so dying shall be entitled to for his or her life." And so the judge of the Circuit Court construed that clause. By the same reasoning, we think the preceding clause of the will carries to the survivors, on the happening of the contingency there named, as well the accrued as the original shares. The language is quite as comprehensive; it gives to the "remaining children the part or parts of my lands and estate devised to such child or children so dying." All the land held by

Margaret Park, at the time of her death, had been devised
to her by the will, as well her one-fourth part of the share
given to George, as the part originally given to herself,
and therefore, by the express language of the will, passes
to the surviving sisters, Sarah and Charlotte, for life.

This construction derives support from the subsequent
clause, devising the estate over to Gwynn. The intent of
the testator is clearly expressed, that the whole shall go
over upon the happening of the contingency named, thus
showing still more clearly his intention to be, that the ac-
cruing shares should survive with the original shares. See
*Milson vs. Audrey*, 5 *Ves.*, 465. *Eyre vs. Marsden*, 4 *Myl.
& Cr.*, (18 *Eng. Ch. Rep.*, 231.) *Leeming vs. Sherratt*, 2
*Hare*, 14. *Vandergucht vs. Blake*, 2 *Ves.*, *Jr.*, 534. *Good-
man vs. Goodman*, 1 *De G. & Sm.*, 699. *Chamberlaine vs.
Chamberlaine*, 6 *Ellis & Bl.*, (88 *Eng. C. L. Rep.*, 624.)
*In re Crawhall's Trusts*, 39 *Eng. L. & E. Rep.*, 449.

The decree from which these appeals were taken will be
reversed, and the cause remanded to the Circuit Court, in
order that a decree may be passed by that Court, in con-
formity with this opinion.

Considering that there was reasonable ground for contest
with reference to the true construction of the will, this
Court will not award costs upon the appeals to the success-
ful parties. In our opinion, the costs of these appeals ought
to be paid out of the estate, and the Circuit Court will so
direct by their decree.

*Decree reversed and cause remanded.*