## LOUISA J. WILSON ET AL. *vs.* BENJ. H. D. BULL ET AL.

*Construction of a Devise to Children For Life With Remainder to Survivors Upon a Death Without Issue—Admissibility of Evidence.*

The owner of a number of ground rents devised the same to his wife for life and directed that after her death each one of his six children should, respectively, during their natural lives, enjoy one equal undivided sixth part of said rents. Upon the death of any one of the six children leaving issue, his or her sixth part was to become the absolute property of his or her children, or descendants, taking *per stirpes*. The will further provided that in the event of the death of any of testator's children without leaving a descendant then living, "then the part or share of the said son or daughter so dying shall go to and become the property of my surviving child or children." Testator left surviving him a widow and five daughters and one son. His widow died three years after the testator and the latter's six children were then all living. Before 1891 all the children had died except the son and one daughter. In that year the son died without leaving issue. *Held*, that under the will the interest of the son in the ground rents passed to his sister, the then only surviving child of the testator, as her absolute property to the exclusion of the children of her deceased sisters.

When the question is as to the construction of a will, evidence that certain of the testator's children were his favorites is not admissible.

A written memorandum signed by a testator prior to the execution of his will is not admissible to control his intention as clearly expressed in the will.

Appeal from the Court of Common Pleas (HARLAN, C. J.)

The cause was argued before FOWLER, BRISCOE, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*S. S. Field* (with whom was *John H. Morgan* on the brief), for the appellants.

*Edgar H. Gans* and *Wm. J. O'Brien, Jr.*, (with whom was *John Hinkley* on the brief), for the appellee.

FOWLER, J., delivered the opinion of the Court.

This is an action of ejectment brought by the plaintiffs against the defendant, Sarah J. Bull, to recover a two-thirds interest in certain ground rents in Baltimore City.

During the course of the trial the defendant reserved several exceptions eight of which refer to the rulings on the admissibility of testimony and one, the ninth, to the ruling upon the prayers. But the only important question presented by this appeal arises upon the granting of the defendant's first prayer by which the jury were instructed that no evidence had been offered legally sufficient to entitle the plaintiffs to recover the property mentioned in the declaration and directing a verdict for the defendant. The verdict and judgment being against the plaintiffs they have appealed.

The propriety of this action of the trial Court in taking the case from the jury depends upon the question as to what is the true construction of the will of the late John Berry, of Baltimore City. Before proceeding to construe the will, or the third item thereof, which is the only part of the will involved in this controversy, it may conduce to a clearer understanding of the questions presented if we state the facts showing something of the family history of the testator and his children.

It appears then that at the time he executed his will, and at the time of his death the situation had not been changed in this respect, the testator had six children, five daughters, Harriet E. Berry, Susan L. Hurst, Julia A. Turner, Eliza E. Berry, Sarah J. Bull; and one son, John S. Berry. The testator died in 1856, and his widow, Sarah D. Berry, survived him about three years, having died in 1859, at which time all of the children were living.

One of the daughters of the testator, Harriet E., died without issue in 1873. Mrs. Hurst, another daughter, died in 1880, leaving two children, Mary E. B., now Mrs. Purnell,

and Sarah B., now Mrs. Morgan; Mrs. Turner died in 1886 leaving two children, James H. and Louisa J., now Mrs. Wilson. The remaining daughter, Eliza E. Berry, and the only son, John S. Berry, died respectively in 1890 and 1901 without issue. Sarah J. Bull, the original sole defendant in this action, died since it was brought, and her children and the children of her deceased children are made parties defendant in her place.

It appears that in March, 1884, a bill of complaint was filed in the Circuit Court of Baltimore City by the then four surviving children of the testator against Mary E. B. Purnell and Sarah B. Morgan, the two children of Susan L. Hurst, and their respective husbands, and on the 4th of April, 1884, after appropriate proceedings were taken for that purpose, the ground rents which form the subject-matter of this suit were, according to the contention of the defendants, divided in accordance with the construction of the will of John Berry which is now sought to be established by the defendants. It was urged on the part of the defendants that inasmuch as the decree in the equity cause we have just mentioned, provided in clear and express terms that the rents were to go to the *then* surviving children of the testator, the plaintiffs in this case who were either parties to the equity cause, or claim through those who were, are estopped to set up a construction of the will different from that adopted in the decree relied on. The Court below in granting the plaintiff's second prayer ruled against this contention of the defendant and held that the plaintiffs were not estopped to maintain this suit by anything done by them or by the Court in the former suit.

This brings us to a consideration of the provisions of the will on which this controversy hinges, and we will proceed to construe it and determine the rights of the parties without regard to the question of *estoppel* or *res adjudicata* based upon the decree and proceedings in the equity suit of 1884 in the Circuit Court of Baltimore City.

In the first place it may be stated that the only interest here involved is the one-sixth interest of the testator's son, John S.

Berry, who died in 1901 without issue.   It appears that upon his death, the actual possession of this one-sixth passed to the then only surviving child of the testator, namely, Sarah J. Bull, to the exclusion of the children of her deceased sisters. The contention of the latter, who are plaintiffs, is that this one-sixth of the rents which John S. Berry had for life under his father's will, under a proper construction of that will, goes, one-third to Mrs. Bull, the defendant, and the remaining two-thirds to the plaintiffs, while the proposition on which the defendants' claim is based, is that the rents in question, that is the one-sixth interest of John S. Berry, on his death without issue properly passed to her in 1901 on his death as her absolute property under her father's will.

As we have already stated, the learned Court below in granting the defendant's first prayer and withdrawing the case from the jury, adopted the views of the defendant.

In order to determine whether the construction thus given by the learned Judge is the correct one we must ascertain, what is the intention of the testator *as declared in the will.* And in order that we may have his language before us we here transcribe it.   It is as follows :

*Item.* All my annuties or ground rents and the fee and reversion of and in the grounds and premises out of which any and all of the said annuities or ground rents now issue and are payable, and all the annuities or ground rents I may hereafter own or in any manner be possessed of at the time of my decease, I give and devise to my beloved wife, Sarah D. Berry, to hold for and during the term of her natural life, so as to enjoy the said estate and property and the rents, issues, income and profits thereof, to receive and apply to her own use and benefit, and from and immediately after the death of my said wife, each one of my six children, John S. Berry, Eliza E. Berry, Susan L. Hurst, Harriet E. Berry, Juliet A. Turner, and Sarah J. Bull, shall respectively during their natural lives use and enjoy one equal undivided sixth part of the estate and property devised by this section of my will and the rents and profits arising therefrom, take and apply to their sole and separate use and benefit, and the receipts of my said six children respectively alone shall be good and sufficient receipts and acquittances therefor, and from and immediately after the de-

cease of my said six children respectively, then one equal un-divided sixth part of the estate and property devised by this section of my will shall go to and become the property of their child and children respectively, his, her, or their heirs, execu-tors, administrators and assigns, absolutely, if more than one, as tenants in common, to be equally divided between them, share and share alike, the issue of any deceased child of my said son or of my said five daughters respectively, if any such issue there should be living, to have and take the part or share to which the parent of such issue respectively would if living be entitled. And in the event of the decease of any of the children of my said son or of my said five daughters, re-spectively, under age and without issue living at the time of his, her or their respective deaths, the part or share of him, her or them so dying shall go to his, her or their surviving brothers or brother and sisters or sister, his, her, or their heirs, executors, administrators and assigns, absolutely. *And in case it shall so happen that either my said son or any or either of my said daughters should depart this life without leaving a child, children, descendant or descendants of the same living at his death or her death respectively, then the part or share of the said son, daughter or daughters so dying shall go to and become the property of my surviving child or children, his, her or their heirs, executors, administrators and assigns absolutely.*

It seems to us that if there ever was a will which upon its face may be said to be plain and free from ambiguities, such language may be applied to this one. Men are so constituted however that they do not all look at things from the same point of view, and experience teaches us that different conclu-sions will be reached especially in will cases, not only by counsel who may be expected naturally and not improperly, to be swayed by a conviction that their clients are right, but also by Judges who, without favor or partiality for either side, try only to reach a just conclusion justified by the language of the testator. The main object, then, indeed it may be said the only object, should be to discover the intention of the tes-tator, and having ascertained his wishes they must control our conclusion, unless they are contrary to some settled rule of law or of property or of some well defined rule of public policy. *Mis. Soc.* v. *Mitchell*, 93 Md. 202; *Abell* v. *Abell*, 75 Md. 40. It should not be forgotten, however, that the inten-

tion of the testator which is to govern is the intention he has expressed *in his will.* With great industry counsel for the appellants have collected, discussed and applied in their voluminous brief about one hundred authorities to sustain their views in regard to the construction of the will and the question of *res adjudicata.* Some twelve or fifteen authorities only are cited by the appellees—most of them being among those cited by the appellants. It seems to us, as we have already said, that the intention of the testator is very clearly expressed and hence a statement of our views without much elaboration will be sufficient.

It will be observed that the first thing which demands the attention of the testator is a provision for his wife. All the ground rents he owned at the time of making his will and all that he might thereafter own or be possessed of at the time of his death, he gives in the first place to his wife during her life; and secondly, after her death he gives a life estate in one undivided sixth of said rents to each of his six children. He mentions his children by name. First he names his son, John S. Berry, then his five daughters, and he declares that they shall respectively during their lives use and enjoy one equal undivided sixth part of said rents and the income and profits therefrom ; thirdly, he provides that immediately after the decease of his six children respectively one equal undivided sixth part of said rents shall go to their child or children respectively absolutely, if more than one as tenants in common, to be equally divided between them, the issue of any deceased child of his said son or of his said daughters respectively, if any such issue there should be living, to take the share to which the parent of such issue respectively would, if living, be entitled. Provision is then made for the case of the death of any of the children of his son or of his daughters respectively dying under age and without issue living at the time of his, her or their respective deaths—providing that the part or share of him, her or them so dying shall go to his, her or their surviving brothers or brother and sisters or sister, his, her or their heirs, &c.—absolutely. Then follows the concluding part of

the paragraph of the will which gives rise to this controversy. Having provided for his wife during her life and having made a similar provision for his six children respectively he provided that after the death of his children respectively his grandchildren should take *per stirpes* an absolute title to the one-sixth devised to their respective parents. It is significant, we think, that having arrived at this point in directing how his estate should devolve upon his descendants, he declares that the issue of any deceased child of his children—that is to say his great grandchildren, if any, should take *per stirpes* the share to which their respective parents would, if living, be entitled. That is to say he declares in most unmistakable terms that the one-sixth of his ground rents devised to his children respectively, should be enjoyed by them and by their children and by their children's children, if any living, to be taken *per stirpes;* and in this sense there was uniformity and equality observed by the testator in the disposition of the one-sixth *in case his son or either of his daughters should leave a child or children surviving him or her.* But when he comes to consider the contingency of his son or either of his daughters *dying without a child or children living at his or her death respectively* his language is entirely different, and in the place of the necessarily long provision for the obvious contingencies of his grandchildren and great grandchildren dying with or without child or children, he simply declares that in case his son or either of his daughters should die without leaving a child or descendant at his or her death, the share, that is to say, his or her undivided sixth, should go to the testator's surviving child or children absolutely.

What more just disposition of his valuable property could the testator have made, than that which the language of his will on its face indicates? In case any of his children should leave a child or children surviving him or her, such child or children should have the whole of their respective parents share; but in case any child of the testator should die without issue living at his or her death, the share of such child so dying shall go to *his* or *her* surviving brother and sisters.

That is to say, having already provided that his children in the first place should take each one-sixth and the children of his children in the second place should take by representation the share which their respective parents had enjoyed during life, he now provides for a new and entirely different devolution in case one of his own children should die without issue. In other words he simply declares that in case a child of his dies leaving issue or descendants of issue, such issue or descendants shall take by representation. But in case it shall so happen that any child of his should die leaving no child or descendants it was his will that there should be no representation, but that the share of his child so dying should go to his living child or children.

The inference seem to us irresistible that if he had intended the same rule to be observed in both cases he would have so declared.

The learned counsel for the appellants earnestly contended that the words in this will "surviving child or children" should be construed so as to mean the "other" children of the testator. But this contention certainly does not give the words their ordinary meaning. Nor have we been able to find anything in the will before us to convince us that the testator used these words in any other than their usual sense. In the case of *Anderson* v. *Brown*, 84 Md. 261, the testator, as here, n the first place gave his wife a life estate. At her death he provided that his real estate should go to his eight children, naming them and then declared "in case of the death of any one of them without issue living at the time of his or her death, I do give and devise his or her share to the survivor or survivors." It was contended that the issue of the predeceased children of the testator would take a proportional part of the share of the ones so dying without issue, and the Court below so held, but on appeal this Court said (PAGE, J., delivering the opinion): "If the word 'survivor' is to be taken in its ordinary meaning, it is obvious that no one can take but one who answers the description of the parties named as devisees, viz., the survivor or survivors of the testator's eight

children." * * The opinion proceeds to state that in order to meet this difficulty and to show that the word "survivor" should not be given its usual meaning it was contended, as it is here, that it should be regarded in that case as synonymous with "other." In regard to this contention it is said: "It is undoubtedly true that in order to carry out the intention of the testator this has sometimes been done. "But" says *Redfield* in his Treaties on Wills, vol. 2, p. 272, (3rd ed.) "it seems to be now established by numerous decisions that the same rule of construction will be applied to the word 'survivors' as to any other. It will be received in its natural and literal import unless there is something in the context or attending circumstances tending to a different conclusion."

Again it is said : "All the cases to which we have been referred in which 'survivor' has been construed as equivalent to 'other' appear to have been so decided because there was something in the will to make it clear that the testator intended the issue of predeceased children to take, or that some other clearly expressed intention would otherwise be rendered inoperative." A number of English cases are then cited, among which will be found several relied on by the appellants to sustain their contention as to the meaning of the word "survivor." In the case of *Turner* v. *Withers*, 23 Md. 41, cited and commented on in 84 Md. 261, the testator devised his real and personal estate to his wife and five children, to each one-sixth part for life, and in case either died without children or descendants alive at his or her death, the part of the one so dying to be divided among the *remaining children* for their lives ; in case of death with children, then to the children *per stirpes* and not *per capita* * * *. One of the children died in 1852 leaving children, and in 1860 another died without children ; the question was whether under the will the issue of the child who died in 1852, were entitled to a share of the estate of the child who died in 1860. In commenting upon the case of *Turner* v. *Withers*, *supra*, in 84 Md. we said: "Here then were many of the conditions upon which the English Courts have construed the devise to create cross-remainders between

the *stirpes*, as well as between the children." But this Court
held in 23 Md. and again in 84 Md. that the children of pre-
deceased children did not take, because they did not answer
the description of the parties as devisees, in the one case the
devise being to "remaining children" and in the other to "sur-
viving child or children."

But finally the appellants urged that the survivorship of the
children of the testator is to be referred to the time of the death
of the widow or of the testator himself, and not to the death
of the life tenant, John S. Berry.

And we may say here in regard to this construction sug-
gested by the appellants, as we have said in relation to others, ·
that there is nothing, so far as we have been able to ascertain
from an examination of the will itself, or of the circumstances
surrounding the testator, which would induce us to hold that
his intention was other than that which appears upon the face
of the will. If he had intended that those he named as " the
survivor or survivors of his children" should be ascertained
and fixed at any particular time is it not almost certain he
would have so provided? He failed, however, to make any
express provision to this effect. He could have said that the
share of a child dying without issue shall go to my children
who are surviving at my death, or at the death of my widow.
But not having made any such provision we may conclude he
intended that *whenever* one of his children should die leaving no
child or children surviving, *then* his remaining children or his
surviving children should take the share of the child so dying.
Thus in 29 *Ency. of Law*, p. 504 (Wills), it is said: "It may
be laid down as a general rule of construction that where the
context is silent, words referring to the death of a prior de-
visee or legatee, in connection with some collateral event, ap-
ply to the contingency happening *at any time*, as well after as
before the death of the testator. In this case, of course, the
contingency of the life tenant dying without children happened
long after the death of the testator. In 2 *Jarman on Wills*,
star page 1569 (6th ed.), under the head "Rule where the gift
is future" the author says that where there is another point of

time than the death of the testator to which the death of a preceding devisee may be referred ("as obviously is the case where the bequest is to take effect in possession at a period subsequent to the testator's decease) the words in question are considered as extending to the event of the devisee dying in the interval between the testator's decease and the period of vesting in possession." In *Hutchins* v. *Pearce*, 80 Md. 445, it is declared that the words "die without issue" are to be construed to mean a want or failure of issue at the death of the life tenant. Applying this rule to the case before us the result would be that Mrs. Bull the only surviving child of the testator would take upon the death of John S. Berry, the life tenant who died without children. And as was said in the case just cited "we are of opinion that this construction effectuates the intention of the testator, as gathered from a fair examination of the whole instrument when taken in connection . with his (the testator's surroundings and the objects of his bounty.)" See also *Reiff* v. *Strite, &c.*, 54 Md. 303, and *Weybright* v. *Powell*, 86 Md. 573.

It only remains briefly to dispose of the questions relating to the exceptions taken to the rulings upon the testimony.

The first, third, fourth and fifth exceptions relate to the rejection of testimony to show that certain of the testator's children and grandchildren were favorites. We do not think such testimony was relevant; but even if admitted it could not alter our view of the true construction of the will. The second and eighth exceptions were taken to the exclusion of a certain written memorandum dated and signed by the testator January 1st, 1856, prior to the date of the will. This testimony also we think is entirely irrelevant. Assuming that the paper expressed the wishes and intention of the testator, it cannot be received to control, alter or modify in any respect his intentions, which we have said, were clearly expressed in his will.

The sixth and seventh are to the refusal of the Court to allow one of the plaintiffs to express her opinion as to whether her aunt, one of the children of the testator, was capable of

bearing children.   Without discussing this exception it is suf-
ficient to say that the question asked the witness even if rele-
vant, was one which she did not show herself by her testi-
mony qualified to answer.

The views we have expressed in regard to the construction
of the will control the decision of the case, and, therefore,
without reference to the question of the binding force of the
decree of the Circuit Court of Baltimore City dated 27th of
March, 1884, it follows that the judgment appealed from must
be affirmed.

*Judgment affirmed.*

(Decided April 2nd, 1903.)