J. ELLIOTT ROSS ET AL., *v.* SAFE DEPOSIT & TRUST COMPANY, TRUSTEE, ET AL.

[No. 68, October Term, 1934.]

*Decided January 16th, 1935.*

The cause was argued before BOND, C. J., URNER, OFFUTT, PARKE, and SLOAN, JJ.

*W. Conwell Smith,* with whom was *Joseph L. Donovan* on the brief, for the appellants.

*Arthur W. Machen, Jr.,* and *Wendell D. Allen,* with

whom were *Armstrong, Machen & Allen* on the brief, for the appellees.

PARKE, J., delivered the opinion of the Court.

The appeal is from a decree in a special case stated, construing the will of Charles H. Ross, who died in 1861. The usual provisions for the payment of debts and funeral expenses were followed by directions for the re-interment of his parents and by minor legacies to relatives. The testator then, after requiring that his designated personal property be converted and invested, devised and bequeathed all his property to his wife, and her successors, in trust, for the sole and separate use of his wife during her life, subject, however, to pay, if she be living, (a) the sum of $5,000 to every one of his three sons, if and when each severally became twenty-one years of age; and (b) the sum of $300 annually during the lifetime of his wife, to every one of his three daughters, if and when she should marry; and, after the death of the life tenant, then over to her successor, in trust, to grant and convey and pay over the one-sixth part of the residue of the trust estate to every one of his three sons in an installment of $5,000 upon a son's arrival at the age of twenty-one years, and the remainder upon his arrival at the age of thirty years; and, between his arrival at majority and at the age of thirty years, to pay the income of the remainder of his one-sixth part to such son. In the event that, at the death of the life tenant, any of the three sons should be an infant, the income of such infant son's one-sixth share should be held for the infant's use, and so much as should be necessary and proper should be applied to the support and education of every one of such infants until he arrive at the age of twenty-one years.

The remaining three-sixths of the estate was to be held, upon the death of the mother, by her successor trustee, in trust, so that every one-sixth was to be held severally for the use and benefit of one of the testator's three daughters for and during her natural life and

from and after her death, then in trust to convey, grant, and pay over such one-sixth share to such daughter's children, share and share alike, absolutely, *per stirpes* and not *per capita*.

The testator then provided: "But if any of my sons shall die before he or they shall have received the whole of the property I hereby give to him or them; or if any of my daughters shall die without issue living at the time or times of her death or their deaths, then shall the trustee hold the property belonging to him, her or them thus dead, in trust for the use of the survivors, in the same manner, and for the same estates and purposes, as those above mentioned."

The declaration of trust then ends with the statement that the payment of the sum of $5,000 by the mother to any of the three sons upon his attaining his majority shall be counted as part of that son's one-sixth portion, so that every one of the six children shall receive equal shares in the division of the estate into six parts. This provision is in a separate paragraph, and plainly relates to the division of the estate, upon the death of the mother, into six equal shares and their allocation of one share to every one of the six children: and its obvious purpose is to preserve the equality of this division and allotment by charging as an advancement the sum of $5,000 against the share of any son to whom such sum may have been paid by the trustee and mother during her life, as provided by the terms of the trust.

A subsequent codicil to the will need not be recited because it relates to details in the management of the testator's business affairs after his death, and does not affect the construction of the will.

The three sons are dead. Jesse E. Ross was the first to die, in 1862, at the age of eight years. Charles H. Ross, Jr., died in 1879, aged twenty-eight years. He had received the sum of $5,000 upon attaining the age of twenty-one, and died without issue. The death of the widow or life tenant intervened in 1881, and John R. Ross died in 1920, leaving surviving him as his only next

of kin and heirs at law two children, J. Elliott Ross and Clara Ross Astashkin. Before his death, his sister, Fannie Ross, died in 1887, unmarried and without issue, so, her estate having fallen in the corpus of the trust along with the shares of Jesse E. Ross and Charles H. Ross, Jr., John R. Ross had received, in his lifetime, a total of one-third of the net residuary estate of the testator, after deducting the $5,000 paid to his brother Charles H. Ross, Jr. The daughter of the testator, Sallie Ross Heighe, intermarried with John M. Heighe, died on May 16th, 1933, and she had received her income from the trust to the time of her death. Mrs. Heighe left no issue surviving at the time of her death, and the only descendants or issue of the testator living at the death of Mrs. Heighe were Mrs. Mary C. Ross Littig, a daughter of testator, and her children, Charles Ross Littig and Clara Littig Bissell; and J. Elliott Ross and Clara Ross Astashkin, the two children of John R. Ross, and the grandchildren of the testator.

On these facts the question propounded in the special case stated was whether all of the corpus of the trust estate theretofore held in trust for the said Sallie Ross Heighe for life, together with the income thereon which had accrued since her death, falls back into the trust estate for the benefit of the surviving daughter, Mary C. Ross Littig, for life, and then over as provided in said will, or whether the one-half of the principal and accrued income falls back into the trust estate for the benefit of Mrs. Littig for life and then over as provided by the terms of the trust, and the other one-half passes to J. Elliott Ross and Clara R. Astashkin, the two children of John R. Ross, the son, and the grandchildren of the testator. The decree of the chancellor was that by a true construction of the will the expressed intention of the testator was that the Safe Deposit & Trust Company of Baltimore, as substituted trustee under the will of the testator for the share of Mary C. Ross Littig, became entitled to receive all the corpus or principal of the share or shares theretofore held in trust for the

said Sallie Ross Heighe, together with the income accrued thereon since her death, upon the death of the said Sallie Ross Heighe without leaving issue living at her death, and that the defendants J. Elliott Ross and Clara R. Astashkin are not entitled to any share or interest therein.

The duration of the trust is for the life of the mother, and then for the lives of the sons until they reach the age of thirty, and for the lives of the three daughters and the survivors and survivor of them. After the mother's death, one-sixth part became the absolute estate of every one of the sons as he attained the age of thirty years, subject to the diminution by the $5,000 paid to every son as he became twenty-one years of age. So, if any son should die before attaining the age of twenty-one, or if another son should die before becoming thirty years of age, but after he had reached the age of twenty-one years and had been paid his $5,000 at his majority, the share of each to the extent it had not been paid at the age of twenty-one would fall into the corpus for the benefit of the surviving children, without reference to whether or not the son so dying had issue or issue surviving him. Again, if a third son should become thirty years of age and receive his one-sixth portion of the trust, he would have no right under the trust to any further share in the trust estate nor would any of his issue. It follows that, with reference to his sons, the testator intended the sons to take only upon the fulfillment of the contingency of their living to specified ages, and to the exclusion of their children and issue. The trusts for the three daughters were created separately for very one of them by name in a one-sixth part of the estate. The trust with respect to every one was to endure for her life, and after her death the trustee was to grant, convey, and pay over the same to her children, share and share alike, *per stirpes* and not *per capita*. At the death of each daughter without issue living at the time of her death, then the trustee was to hold the property belonging to her thus dead in trust for the

survivors in the same manner, and for the same estates and purpose, as the trusts created by the will. As has been seen, this provision applies equally to the share of any son who might die before he was entitled to receive the whole of the share held in trust for him. So, these clear and express terms, when considered in connection with the whole will, leave no doubt that by the term "survivors" the testator intended to designate those of the testator's children who, either at the death of a son before he had received the whole of his share of the trust, or at the death of a daughter without leaving issue, would then survive as beneficiaries of the trust. In other words, the "survivors" would be limited to the then living testator's daughters or daughter and the testator's sons or son so long as the sons remained *cestuis que trustent* within the terms of the trust by reason of their being alive and not having attained the age of thirty years before the happening of the contingency.

The construction seems obvious. It enforces completely the testamentary intention. It avoids the question of an intestacy with respect to accrued shares, as they are successively brought within the same trusts and limitations in fulfillment of the testators' manifest design that, at the death of a son under thirty or a daughter without issue, "then shall the trustee hold the property belonging to him, her or them thus dead in trust for the use of the survivors in the same manner and for the same estates and purposes as those above mentioned." So by this provision the accrued shares are declared to be held upon the same trusts and limitations as the original shares. *Mercer v. Hopkins,* 88 Md. 292, 307, 308-316, 41 A. 156; *Marshall v. Safe Deposit & Trust Co.,* 101 Md. 11, 60 A. 476; *Turner v. Withers,* 23 Md. 18, 34, 44; *Miller on Construction of Wills,* 786.

When Mrs. Heighe died without issue, all her brothers and one of her sisters were dead. The only issue of the testator then living were Mary C. Ross Littig, his daughter, and four grandchildren. Two of these grandchildren were the children of this surviving daughter, and the

other two grandchildren were the son and daughter of the testator's son, John R. Ross, who died in 1920. Of these surviving issue of the testator, his daughter was the only one within the meaning of the term "survivors" as defined by the will of the testator.

The sentence in controversy has for its subjects the three sons and three daughters, in relation to the contingencies of a son dying before thirty and not receiving his full share or of living to the age of thirty and receiving his full share, and of a daughter dying without issue living at the time of her death. These children are the six specifically named members of a group to take the share of any child in the group that had fallen in on the happening of the particular contingency created by the will. Their number must decrease either by the death of a son before attaining the age of thirty years, or by his having received his share at thirty, or by the death of a daughter. As the group is limited to these six children, so must the survivors be limited to the very members of this group. The contingencies declared by the testator for the gradual termination of the trust can only be fulfilled with reference to the six children, and therefore only the happening of the particular contingency with respect to one of these six children can lessen the number of the limited and individually described group. As the contingencies provided are certain to happen, but the times of their occurrence are uncertain, there was necessarily contemplated by the testator a succession of these contingencies, and consequently a progressive reduction of the specified group, through a lessening number of survivors, to one survivor, and so the use of the plural form of "survivors" has no other significance than that it serves to include a singular or plural survivorship. *Theobold on Wills*, (7th Ed.) 680; *Hearn v. Baker*, 2 K. & J. 383, 69 Eng. Reprint, 381. See *Barnum v. Barnum*, 42 Md. 251, 310; 1 *Jarman on Wills* (6th Am. Ed.) 311.

The testator having clearly expressed his intention by the use of language free of doubt and ambiguity, when considered in connection with every part of the will, the

court is bound to disregard every consideration except the affirmance and enforcement of that intention, since no inflexible principle of law nor rule of property is involved. *Miller on Construction of Wills*, secs. 9, 10, 11, 12. While other questions were under review, the will at bar was before this court in *Heighe v. Littig*, 63 Md. 301, page 303, and, in stating the problem then before the court for determination, the construction which the court here has adopted was thus expressed:

"After the death of his wife the testator gave one-sixth of the trust estate thus created, to each one of his six children, the sons each to have $5,000 at the age of twenty-one years, and the remainder of the sixth at the age of thirty years. It was provided that the daughters should receive the income from their respective portions of the estate, thus divided, during their lives, after which the principal was to go to their children; and in the event of their being no children, then to their surviving brothers and sisters. If any of the sons died before receiving the whole of the share or shares thus assigned the remainder was to go to the surviving brothers and sisters."

A survivor is one who continues to live after the death of those who comprise his group, and, adapting the language of the court in *Demill v. Reid*, 71 Md. 175, 191, 17 A. 1014, it seems to us to be clear law as well as good sense that, in a case like this, where there is an ultimate limitation upon a contingency to a group of persons plainly described, and there is a person answering the description *in esse* when the contingency happens, that person alone can take. *Mercer v. Hopkins*, 88 Md. 292, 311, 312, 41 A. 156; *Schapiro v. Howard*, 113 Md. 360, 374-376, 78 A. 58; *Burden v. Burden*, 130 Md. 551, 100 A. 776; *Miller on Construction of Wills*, secs. 76, 276; *Anderson v. Brown*, 84 Md. 261, 35 A. 937; *Wilson v. Bull*, 97 Md. 128, 54 A. 629; *Bradford v. Mackenzie*, 131 Md. 330, 101 A. 774; *Merowitz v. Whitby*, 138 Md. 222, 113 A. 651.

The court, therefore, agrees with the chancellor that,

upon the death of Sallie Ross Heighe, without issue surviving her, the share held in trust for her use during her life, together with the net income accruing since her death, fell into the trust estate held in trust under the will of the testator for the sole surviving daughter, Mary Clare Ross Littig, during life, and then over to her issue surviving at her death.

*Decree affirmed, with costs.*