ARMAND M. PANNONE, JR., Personal Representative of the Estate of George W. Cousins *v.* RICHARD D. McLAUGHLIN, Personal Representative of the Estate of Kathleen D. Cousins et al.

[No. 1335, September Term, 1976.]

*Decided September 16, 1977.*

396

The cause was argued before MORTON, MOORE and MASON, JJ.

*Ronald C. Brubaker* for appellant.

*Leslie J. Clark* for appellees.

MOORE, J., delivered the opinion of the Court.

We consider here the effect upon jointly held real and personal property of the unlawful slaying of a wife by a husband who, within the hour, committed suicide. Also involved is a question of interpretation of a common disaster clause in the husband's will.

In a declaratory judgment proceeding brought by the personal representative of the husband's estate, the trial court (Getty, J.) held that under Maryland law neither a murderer nor those claiming under him may acquire *any* of the estate of the victim; and that the individually held

property of the husband passed to the heirs of the wife under the disputed common disaster provision. We agree with the latter determination. With respect to the jointly held property, however, we conclude that the cotenancies were severed by the killing and that a constructive trust should be imposed upon one-half of the property held by the estate of the killer in favor of the heirs of the victim.[1]

I

On a public street in Cumberland, at 1:12 in the afternoon of October 10, 1975, George W. Cousins, age 34, and a Vietnam veteran, shot and killed his wife, Kathleen D. Cousins, age 32, from whom he had been separated for several months. A short time later, at 1:40 p.m., he himself died of a self-inflicted gunshot wound in the head.

During the marriage, Mr. and Mrs. Cousins acquired two parcels of real estate as tenants by the entireties — the matrimonial residence and a small piece of commercial property. They also jointly owned 181 War Bonds valued at approximately $3,500 and household furnishings. A boat valued at several thousand dollars was titled in the name of the husband who also owned a gun collection. There were two motor vehicles, one titled to the husband and the other to the wife.

We are told that prior to their deaths the parties had made almost identical wills. The will of the husband was admitted to probate but that of the wife was never found. The wife had been married previously and had two children by that marriage. There were also two children by her marriage to Mr. Cousins. The will of Mr. Cousins named his two natural children as residuary legatees if his wife predeceased him but did not name the two stepchildren. The third paragraph of the will, the interpretation of which is at issue here, provided for a conclusive presumption of his

---

1. As will be seen *infra*, the net distribution to the four children of the victim (two by the marriage to the slayer and two by a previous marriage) may be substantially the same as that which would follow under the ruling of the trial court.

wife's survivorship in the event of their deaths in a common disaster "or within thirty days of each other."

The trial court construed the will provision as operative with respect to the property owned individually by George Cousins, since husband and wife died within thirty days of each other, and held that such property vested in the estate of Kathleen Cousins and passed to her four children equally, as her heirs at law. The property held in cotenancy was ordered to be distributed in a like manner, the court finding that the heirs of a murderer were precluded from inheriting through him any portion of the estate of the victim.

The personal representative of Mr. Cousins' estate contends, on this appeal, that the trial court's order worked a forfeiture of the property of the decedent in violation of Article 27 of the Declaration of Rights, which provides that conviction of a crime shall not result in corruption of blood or forfeiture of estate. It is further the position of the appellant that the second and third paragraphs of the decedent's will should be read together, so as to nullify the conclusive presumption of the wife's survival where death did not result from a common disaster, and require distribution of the husband's individually-owned property to his two children, as provided by the second paragraph of his will.

## II

The lower court, after a discussion of applicable law, concluded that in Maryland "a murderer and those claiming through him may not inherit any of the estate of the victim." We do not so interpret the Maryland cases.

The Maryland decision most nearly akin to the facts with which we are presented is *Price v. Hitaffer*, 164 Md. 505, 165 A. 470 (1933), where the heirs and personal representatives of the estate of Walter J. Martin appealed from an order excluding them from participating in the distribution of the estate of Della A. Martin, the wife of Walter, the husband having murdered his wife and committed suicide immediately thereafter. *Mrs. Martin's estate consisted*

*entirely of personal property in her own name, and she died
intestate.* Under the then applicable statutes of descent and
distribution, the victim's husband would have received
one-half of her estate, having survived her, the other half to
be divided among the other heirs at law. The court rejected
the appellant's claim that the trial court's order worked a
forfeiture of the husband's property rights under Article 27
of the Declaration of Rights. In the court's view, no
deprivation of property in which the husband had an
interest occurred, and, further, a person should not be
permitted to enrich his estate by his own wrongdoing:

> "There can be no forfeiture without first having
> beneficial use or possession. One cannot forfeit
> what he never had. The surviving husband in the
> case before us, never having acquired any interest
> in his wife's estate, there is nothing upon which the
> constitutional or statutory prohibition can operate.
> *By virtue of his act he is prevented from acquiring
> property which he would otherwise have acquired,
> but does not forfeit an estate which he possessed."*
> (Citations omitted.) (Emphasis added.) 164 Md. at
> 508, 165 A. at 471.

The *Price* case thus stands for the principle that a murderer
cannot enrich his estate by his act of wrongdoing, but
neither can he be deprived of an interest in property which
he possessed at the time he committed his wrongful act. An
unconstitutional forfeiture would result in the latter
instance.[2]

A similar, though less difficult, issue was presented to the
Court of Appeals in *Chase v. Jenifer,* 219 Md. 564, 150 A. 2d
251 (1958), where an insurer filed an interpleader action to
determine the rights of a wife as beneficiary of her
husband's life insurance policy in the light of her conviction
of manslaughter in the death of her husband. Analogizing

**2.** For a discussion of the implications of Price v. Hitaffer, see the
comment entitled, Felonious Homicide And The Right of Survivorship
Under Tenancy By The Entireties, by Arnold M. Weiner, 17 Md. L. Rev. 45
(1957).

the facts to *Price v. Hitaffer, supra,* the court held that a beneficiary would be disqualified whether convicted of murder or manslaughter, under the equitable doctrine that a wrongdoer should not profit as a result of his illegal acts. More recently, this Court recognized the principles of the above decisions in *Hill v. Lewis,* 21 Md. App. 121, 318 A. 2d 850 (1974). This was an appeal from the granting of summary judgment by the trial court on an issue submitted to it by the Orphans' Court as to whether a husband murdered his wife and should therefore be removed as personal representative of his wife's estate. The decision in *Hill* turned upon a procedural issue, but the Court noted preliminarily, citing *Chase v. Jenifer, supra,* and *Price v. Hitaffer, supra,* that a murderer, his heirs and representatives of his estate cannot share in the estate of the victim, and that an actual "conviction" of murder was not required for such bar to apply. In a footnote, the Court reiterated that, under *Price,* the constitutional provision against forfeiture of property upon conviction of a crime does not permit a murderer to claim a share of the victim's estate as an heir or next of kin, but does protect from forfeiture that property which the wrongdoer already possessed at the time of his illegal act. 21 Md. App. at 124, n.1, 318 A. 2d at 852-853, n.1.

We recognize that the issue of whether the loss of a survivorship interest in property owned as tenants by the entireties constitutes a forfeiture, where one spouse murders the other, has not been confronted in the Maryland decisions referred to above. In *Price v. Hitaffer, supra,* the husband's heirs asserted rights in personalty of the murdered wife which would, in the event of the wife's natural death, have vested in the husband under the Maryland statutes of descent and distribution. It is clear that the court's decision would have been different if the husband had had a pre-existing ownership interest in his wife's property. 164 Md. at 508, 165 A. at 471. The import of *Price* for our purposes is that no additional benefit should accrue to the estate of George Cousins by virtue of his wrongful act, but that his heirs cannot be divested of property in which he had a prior legal interest.

With respect to the property owned by George and Kathleen Cousins as tenants by the entireties, the appellant argues that the interest of George Cousins was not enhanced by his wife's death, since his title derived from a prior inchoate ownership interest in the whole of the property. Indeed, a tenancy by the entireties in Maryland has all its common law incidents and is based on the concept of the unity of husband and wife. *Stieff Co. v. Ullrich,* 110 Md. 629, 73 A. 874 (1909); *Foland v. Hoffman,* 186 Md. 423, 47 A. 2d 62 (1946). Where husband and wife possess real property as tenants by the entireties, each tenant is said to be in possession of the whole, rather than equal portions, during the lives of both. Upon the death of one spouse, title vests in the survivor, not because of any new interest, but because of the original conveyance. *Cunningham v. Cunningham,* 158 Md. 372, 148 A. 444 (1930).

Despite the theory of ownership of the whole of entireties property, based on the unity of the spouses, we believe it is contrary to reason to suggest that the interest of a surviving husband is equivalent to his interest prior to his wife's death. While both spouses are alive, either has but an expectancy of sole ownership in the event of the other's prior death. Such expectancy ripens into unhampered ownership upon the death of one spouse, and substantial benefits accrue to the survivor. As stated by Bogert in *Law of Trusts and Trustees* § 478 (2d ed. 1960):

> "*The courts . . . have appreciated that the survivor does acquire a substantial benefit by the death of his cotenant, in practical effect.* Before such death each was entitled to enjoy the whole, and each had a chance of survivorship and consequent acquisition of the whole as a tenant in severalty. After the death the survivor does not have to share current profits with any one, and he has no possibility of loss of his interest impending over him." (Emphasis added.)

*See also Schilbach v. Schilbach,* 171 Md. 405, 407, 189 A. 432, 433-434 (1937), where the court stated, "Except for the fact

that [a tenancy by the entireties] cannot be defeated, during their lives, without the joint action of both [spouses], the same rules of law apply to it as to any other cotenancy." In determining the manner in which the entireties property of George and Kathleen Cousins should be distributed, therefore, we must bear in mind that the estate of a murderer would indeed be enhanced were it to receive a sole and unfettered survivorship interest.

Various modes of distribution of entireties property have been employed by courts in other jurisdictions where one tenant has feloniously killed the other and then committed suicide. *See* Annot., 42 A.L.R.3d 1116, 1140 (1972). We reject outright such cases as *Beddingfield v. Estill & Newman,* 100 S. W. 108 (Tenn. 1907), which hold that property owned as tenants by the entireties vests solely in the estate of the guilty tenant, where he murders his spouse and thereafter commits suicide. *See also Hamer v. Kinnan,* 16 Pa. D. & C. 395 (1930); *Wenker v. Landon,* 88 P. 2d 971 (Ore. 1939). We have already discussed our reasons for finding a benefit to the estate of the survivor by virtue of his wrongful act, and our aversion to such result. *See Price v. Hitaffer, supra,* and *Schilbach v. Schilbach, supra.* The case of *In re Eckardt's Estate,* 54 N.Y.S.2d 484 (Orange Cty. Surr. Ct. 1945), cited by appellant, is inapposite to the facts at hand, since it involves a surviving spouse who was suffering from somnambulism at the time she killed her husband, and rests on the principle that the survivor should not be penalized where no legal wrong has been committed.

We also decline to follow those cases which hold that the killer is not entitled to receive any portion of the property held as tenants by the entireties by virtue of his wrongful act. *See* Annot., 42 A.L.R.3d 1116, *supra,* at 1147. In *Van Alstyne v. Tuffy,* 169 N.Y.S. 173 (Sup. Ct. 1918), where a husband murdered his wife and then committed suicide, the court enjoined the husband's heirs from making any claim of property held as tenants by the entireties, recognizing that no person should be permitted to profit from his own wrong or found a claim upon a criminal act. We regard such cases as extreme in position and violative of the provision against

forfeiture of property upon conviction of crime in Article 27 of the Declaration of Rights.

The method of distribution which we regard as most equitable and appropriate for the resolution of the conflicting claims in the situation presented here is one which recognizes that the cotenancy was severed by the unlawful killing, and that the property held by George and Kathleen Cousins as tenants by the entireties vested in George when he survived Kathleen, but that his estate is required to hold one-half of the property in constructive trust for Kathleen's heirs. This has become the rule most frequently applied in the distribution of property held as joint tenants or as tenants by the entireties where one spouse murders the other and then commits suicide. *See* Annot., 42 A.L.R.3d 1116, *supra,* at 1141.[3]

One of the most recent and well-reasoned decisions in which this approach was employed is *Johansen v. Pelton,* 87 Cal. Rptr. 784 (1970), where the administrator of the estate of a husband who had killed his wife and then committed suicide appealed from an order requiring him to hold all joint tenancy property of the spouses as constructive trustee for the administrator of the wife's estate. Both parties acknowledged the principle of the Restatement of Restitution § 188 (1937) that "[w]here two persons have an interest in property and the interest of one of them is enlarged by his murder of the other, to the extent to which it is enlarged he holds it upon a constructive trust for the estate of the other." The narrow issue presented for decision was therefore the extent to which the interest of the

---

**3.** We observe that the Uniform Probate Code § 2-803 (b) provides for severance of an estate held jointly or by the entireties where one cotenant intentionally kills the other, "so that the share of the decedent passes as his property and the killer has no rights by survivorship." That provision has been adopted by the following states: Alaska [Alaska Stat. § 13.11.305(b) (1973)]; Arizona [Ariz. Rev. Stat. § 14-2-803(B) (West 1975)]; Colorado [Colo. Rev. Stat. § 15-11-803(2) (1973)]; Minnesota [Minn. Stat. Ann. § 524.2-803(b) (West 1975)]; Montana [Mont. Uni. Prob. Code § 91A-2-803(2) (Allen Smith 1976)]; New Mexico [N.M. Prob. Code § 32A-2-803(B) (Allen Smith 1975)]; North Dakota [N.D. Cent. Code § 30.1-10-03(2) (Allen Smith 1975 Spec. Supp.)], and Utah [Utah Uni. Prob. Code § 75-2-804(2) (Allen Smith 1977)].

husband in joint tenant property was enlarged as a result of the murder of his wife. The court refused to follow the procedure outlined in the Comment to Restatement § 188, whereby the estate of the killer would hold the entire interest in the property as constructive trustee for the estate of the innocent spouse, except for a one-half interest in the income for the killer. Instead, the California court chose to treat the joint tenancy as severed by the unlawful killing and to recognize the creation of a constructive trust with respect to one-half of the property held by the husband's estate in favor of the estate of the slain joint tenant. In *Johansen*, the court stated the issue and its resolution in the following language:

> "In this case the appeal by the slayer's representative squarely presents the issue of whether the slayer has been unjustly enriched by one-half or by the whole ... of the property to which he received the full legal title as surviving joint tenant. An examination of the precedents ... leads this court to the conclusion that *the most equitable solution is to treat the joint tenancy as severed by the unlawful slaying, and to impress a constructive trust on one-half the property held by the surviving slayer, or, as in this case, where he too is deceased, his estate, in favor of the heirs or devisees, other than the slayer, of the slain joint tenant.*" (Emphasis added.) 87 Cal. Rptr. at 788.

*See also Ashwood v. Patterson,* 49 So. 2d 848 (Fla. 1951); *In re Estate of Nunnelley,* 343 So. 2d 657 (Fla. App. 1977).[4]

As indicated in the above quotation, *Johansen* drew upon the resources of a number of earlier cases in which the constructive trust theory was applied. In *Barnett v. Couey,*

---

4. Although the court stated that such a remedy might similarly apply in the case of property held as tenants by the entireties, insofar as some distinction existed between a joint tenancy and a tenancy by the entireties, the "equal division rule" was most appropriate for the former, since tenants by the entireties could not, except by divorce or death of one spouse, sever or partition the property in equal shares. 87 Cal. Rptr. at 789, n.8.

27 S.W.2d 757 (Mo. 1930), where a husband also murdered his wife and then committed suicide, the administrator of the wife's estate petitioned in equity to have the husband's administrator declared constructive trustee of one-half of the proceeds of bank deposits formerly owned by the spouses as tenants by the entireties. The court ruled that the requested relief should be granted because of the "unconscionable mode of . . . acquisition" of full legal title by the husband's survival of his wife. 27 S.W.2d at 760. Theorizing that a severance of the marriage relationship occurred at the time of the murder, the Missouri court drew an analogy to the dissolution of a marriage by divorce, where an undivided one-half interest would vest in each spouse as tenants in common by operation of law. *See also National City Bank v. Bledsoe*, 144 N.E.2d 710 (Ind. 1957) and *Budwit v. Herr*, 63 N.W.2d 841 (Mich. 1954).

As an alternative justification for the imposition of a constructive trust as to one-half of the property, the court in *Barnett* found an implied condition in the common law that death be within the ordinary course of events in order for full ownership rights to become vested in the surviving spouse. 27 S.W.2d at 761. Such condition would not be satisfied where one spouse killed the other. This reasoning was also applied in *Bradley v. Fox*, 129 N.E.2d 699 (Ill. 1955) with regard to joint tenancy property, where the court found a destruction of the unities of time, title, interest, and possession at the time of the murder, thus preventing full survivorship rights from vesting.

A final leading case on this issue is *Grose v. Holland*, 211 S.W.2d 464 (Mo. 1948), where the heirs of the murdered wife petitioned for a decree that they were the equitable owners of one-half of the property passing to the husband by survivorship, and for partition of real property. The husband in *Grose* had not committed suicide, and the issue presented was whether the husband could enjoy the full benefit of the property formerly held as tenants by the entireties. Quoting *Bogert, supra,* § 478, the court found that the husband had been unjustly enriched by his wrongful act, and "[w]hatever practical benefit the

murderer has obtained should be taken from him for the benefit of the innocent successors of the deceased tenant." 211 S.W.2d at 466. Further discussing *Barnett v. Couey, supra,* and noting that survivorship vested full title only when the death of the cotenant was within the contemplation of the law, the court ordered that the property descend as if it had been held as tenants in common by husband and wife, one-half going to the heirs of each spouse.

The constructive trust doctrine is, of course, well-recognized in Maryland law, *Peninsula Methodist Homes and Hospitals, Inc. v. Cropper,* 256 Md. 728, 261 A. 2d 787 (1970), having been most recently applied by this Court in *Hartsock v. Strong,* 21 Md. App. 110, 318 A. 2d 237 (1974). Constructive trusts have traditionally been divided into three categories: those arising from actual fraud, constructive fraud, and some equitable principle apart from the existence of any fraud. 26 R.C.L. *Trusts* § 78 (1920); *quoted in Springer v. Springer,* 144 Md. 465, 125 A. 162 (1924) and *Hartsock v. Strong, supra.* Normally, a constructive trust must be "established from circumstances surrounding the inception of the transaction," *Mayor of Annapolis v. West Annapolis Fire and Improvement Co.,* 264 Md. 729, 736-737, 288 A. 2d 151, 155 (1972), and will arise "where a person holding title to a property is subject to an equitable duty to convey it to another person on the ground that he would be unjustly enriched if he were permitted to retain it." *Siemiesz v. Amend,* 237 Md. 438, 441-442, 206 A. 2d 723, 726 (1965). *See also Clark v. Clark,* 139 Md. 38, 114 A. 722 (1921).

We encounter no difficulty in utilizing the constructive trust to satisfy the demands of equity here. The trial court ordered that all property held by George and Kathleen Cousins as tenants by the entireties passed to Kathleen's estate. Such disposition, in our view, would work a forfeiture upon the rights of a slayer's children, who should not be precluded from claiming an interest in the property which rightfully belonged to him before his wrongful act. As the court stated in *Johansen v. Pelton, supra:*

"To deprive the heirs of the slayer of all interest in the property is to embrace a policy which tends to work a forfeiture, attainder, or corruption of the blood, with respect to the property interest which the surviving malefactor had at the instant before the slaying, and which, except for intervention on the theory adopted by the trial court, would have passed to his heirs." 87 Cal. Rptr. at 789.

At the same time, however, we believe that George's interest was enhanced by the acquisition of survivorship rights in the property. The imposition of a constructive trust on one-half of the property thereby vested in George's estate, to be held for the benefit of Kathleen's heirs, will remove the substantial benefit which would otherwise have been acquired.

When George Cousins killed his wife, he severed the relationship of tenants by the entireties between himself and Kathleen, thereby rendering inoperative the general principle that the survivor succeeds to the whole of the property. *See Johansen v. Pelton, supra,* and *Ashwood v. Patterson, supra.* We think it significant to note that, prior to the deaths of husband and wife, they had suffered marital difficulties, and lived separate and apart for a period of about two months before their deaths. It is not inappropriate, to our minds, to view these circumstances as a prelude to divorce, which would also have dissolved the tenancy by the entireties and given rise to a one-half interest in each spouse as tenants in common. *See Barnett v. Couey, supra.* Finally, we are persuaded of the soundness of this mode of disposition by the reasoning of the decisions in *Barnett, supra,* and *Bradley v. Fox, supra,* where the courts recognized an implied condition in the relationship of tenants by the entireties whereby neither tenant could succeed to sole ownership through murder of a cotenant.

### III

It remains for us to consider the manner in which the property of George Cousins, namely, the whole of his

individually-owned property and his one-half interest in property previously held in cotenancy with his wife, should be distributed under the terms of his will.

In construing a will, it is elementary that the court must effectuate the intentions of the testator with regard to distribution of his property. The Court of Appeals stated in *Judik v. Travers*, 184 Md. 215, 221, 40 A. 2d 306, 309 (1944):

> "In construing wills the supreme law of every case is the intention of the testator, and when once that is ascertained, it must be given effect, insofar as it is lawful, and all other considerations whatsoever must yield to it. . . .
>
> "Where the language employed by the testator is free from ambiguity, the Court must disregard every consideration except affirmance and enforcement of the intention as thus expressed, unless it contravenes some rule or principle of law. . . ." *See also Ross v. Safe Deposit & Trust Co.*, 168 Md. 65, 176 A. 483 (1935); *Hebden v. Keim*, 196 Md. 45, 51, 75 A. 2d 126, 129 (1950).

We are asked, on this appeal, to determine whether the trial court properly interpreted the third paragraph of the will of George Cousins to mean that George's property should vest in the estate of Kathleen, where husband and wife died within thirty days of each other. The appellant urges upon us that this disposition cannot have been what the testator intended, in the light of a contrary intention expressed in the second paragraph of the will. We quote below the controversial provisions of the will in their entirety:

[Paragraph 2]

> "After the payment of all my just debts and funeral expenses, the amount of which latter I expressly authorize and empower my personal representative hereinafter named to pay without the Order of any Court, I give, devise and bequeath all my property and estate unto my wife, Kathleen

D. Cousins, if she survives me and if she does not survive me, then to my children, George W. Cousins, Jr., and Johnnie C. Cousins, share and share alike, and to the children of any deceased child of mine who shall take their parent's share of my estate per stirpes and not per capita."

[Paragraph 3]

"In the event that my wife and I should die in a common disaster or under circumstances which render it impossible to determine who died last or *within thirty days of each other*, then I direct that it be *conclusively presumed* that my wife survived me." (Emphasis added.)

We readily discern, in the second paragraph of the will, an intent on the part of George to provide for his own two children (to the exclusion of his stepchildren) in the event that his wife predeceased him. Somewhat inconsistently, however, the third paragraph creates a conclusive presumption of his wife's survival in the specified circumstances, thereby causing his property to vest in Kathleen or her estate, rather than in his own children. We refuse to engage in speculation as to the testator's reasons for wishing to dispose of his property in such manner.[5] Suffice it to say that, at least with respect to the "common disaster" language, the Maryland Uniform Simultaneous Death Act, Md. Code, C.J. § 10-801 (1974) would create a contrary presumption, *i.e.*, that of the testator's survival, if both spouses perished in a common disaster or under circumstances rendering it impossible to determine who died first.[6] The testator thus appears to have exercised the option

---

**5.** As previously indicated, evidence was presented at the hearing that Kathleen Cousins did execute a will at the same time as her husband, but that it was subsequently lost or destroyed. Whether the terms of Kathleen's will would have shed light upon the rationale behind the third paragraph of George's will is, of course, a distinct possibility, but one which we cannot determine.

**6.** § 10-801 provides as follows:

"Where title to property or its devolution depends upon priority of death and there is no sufficient evidence that the persons have died otherwise than simultaneously, the property of each person

given him under § 10-805 of the Act to negate the statutory presumption, and substitute one of his own making.[7]

We must now decide whether the testamentary presumption should be operative where the spouses died "within thirty days of each other," but not as a result of a common disaster. We hold that it *was* the intention of the testator that the presumption apply under such circumstances, and his intention must be given effect. *Judik v. Travers, supra, Ross v. Safe Deposit & Trust Co., supra.* It appears to us that the testator chose to enlarge the customary scope of "common disaster" language. He accomplished this purpose by providing that his property would be distributed in a like manner, whether the spouses died in a common disaster (*or* where it was impossible to determine who died last), *or* where the spouses died within thirty days of each other. With respect to the appellant's claim that the language of the third paragraph is ambiguous, we recognize that the draftsmanship may leave something to be desired; we find, however, no lack of clarity in the expression of the testator's intent.

We also reject appellant's argument that the conclusive presumption should not be recognized here because it would cause the husband's property to pass through two estates. The property held by the spouses as tenants by the entireties must pass through both estates, in any event, because of the constructive trust which we have imposed. We fail to apprehend any reason, grounded in the law or upon principles of public policy, which should cause us to circumvent the expressed intention of the testator.

In arriving at our conclusion that Mr. Cousins intended that his property vest in his wife's estate under these circumstances, we need not seek support in the decision of

shall be disposed of as if he had survived, except as provided otherwise in this subtitle."

7. § 10-805 provides as follows:

"This subtitle shall not apply in the case of wills, living trusts, deeds, or contracts of insurance where provision has been made for distribution of property different from the provisions of this subtitle."

the Virginia Supreme Court of Appeals in *Shocket v. Silberman*, 165 S.E.2d 414 (Va. 1969), upon which appellee relies. The court in *Shocket* was called upon to determine whether a provision of the husband's will creating a conclusive presumption that his wife predeceased him should be operative where she died "within ninety days after his death," but not as a result of a "common disaster." The testator had juxtaposed the two clauses in a manner similar to that in the Cousins will.[8] Since, however, the testator in *Shocket* created an opposite presumption — one of his own survival, rather than his wife's — we would be reluctant to analogize the facts to our own, differing results being likely to flow from each.[9]

We hold, therefore, that since George and Kathleen Cousins died within thirty days of each other, the conclusive presumption of Kathleen's survivorship set forth in the third paragraph of the will was operative, and controls the disposition of George's individually-owned property and one-half interest in the property held as a tenant by the entireties with Kathleen.

IV

The result we reach is in consonance with the Order of the

---

**8.** The controversial clause of the *Shocket* will provided:

"In the event my said wife, Jennie Tabaken, shall die with me in a common accident or disaster or under such circumstances as make it impossible or difficult to determine which of us died first or within ninety days after my death, I direct that my wife shall be conclusively deemed not to have survived me and the provision herein made for her shall become a part of the rest and residue of my estate."

**9.** The conclusive presumption of the testator's survival in *Shocket* would serve the purpose of preventing his property from vesting in the estate of another person who survived him for only a short time, and becoming subject thereby to disposition by the other person. The *Shocket* presumption appears analogous to Md. Code, Estates & Trusts § 4-401 (1974), which provides as follows:

"A legatee, other than his spouse, who fails to survive the testator by 30 full days is considered to have predeceased the testator, unless the will of the testator expressly creates a presumption that the legatee is considered to survive the testator or requires that the legatee survives the testator for a stated period in order to take under the will and the legatee survives for the stated period."

trial court, although we have arrived at our conclusion partially by a different route. The court below held in effect that the alternate beneficiaries under the will of George Cousins (his two children) were precluded from asserting survivorship rights with respect to the property held as a tenant by the entireties with Kathleen Cousins, their mother, because of George's wrongful act in killing Kathleen. Full property rights were held to have vested in Kathleen's estate, and since she died intestate, the property would descend equally to her four children, only two of whom were the natural children of George.

Our holding is that George's survivorship rights were not extinguished by his wrongful act, but that George's personal representative must be deemed a constructive trustee for Kathleen's heirs to the extent of the one-half interest of their mother which was severed at the time of the killing. Each child will therefore receive a one-fourth interest in the mother's half of the property previously held as tenants by the entireties.

This interest of each child in the property arising from the mother's severed one-half interest will be equivalent to one-eighth of the whole. Such one-eighth interest will, however, be supplemented when George's own one-half interest passes under his will. We have found the conclusive presumption of Kathleen's survivorship in the third paragraph of the will to be effective. Therefore, George's interest will pass through Kathleen's estate once again, and each child will receive an additional one-eighth interest in the entireties property, for a total one-fourth interest in the whole. George's individually-owned property will similarly pass under his will to Kathleen's estate, and be divided among her four children.

*Order modified and, as modified, affirmed; cause remanded for entry of an order not inconsistent with this opinion; costs to be equally divided between the parties.*